Michael "Shawn" BLANSETT and Modesta N. Blansett, Individually and as Next Friends of McKenna Blansett and Blake Blansett, Minors Plaintiffs,

v.

CONTINENTAL AIRLINES, INC. Defendant.

No. CIV.A.G–02–061.

United States District Court, S.D. Texas, Galveston Division.

Dec. 11, 2002.

A Craig Eiland, Galveston, TX, for plaintiffs.

Barclay A Manley, Fulbright & Jaworski, Houston, TX, for defendant.

### *ORDER DENYING DEFENDANT CONTINENTAL AIRLINES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS BASED ON FAILURE TO WARN*

KENT, District Judge.

Plaintiffs Michael "Shawn" Blansett and Modesta Blansett (collectively "the Blansetts") bring this lawsuit against Defendant Continental Airlines, Inc. ("Continental") seeking to recover damages under the Warsaw Convention [1] for injuries allegedly sustained by Shawn Blansett while riding as a passenger aboard a Continental Airlines flight from Houston, Texas to London, England on June 18, 2001. The facts forming the basis of the Blansetts' claims have been set out in several Orders issued by this Court.[2] On July 19, 2002, Conti-

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014 T.S. No. 876 (1934), note following 49 U.S.C. § 40105.

2. *See, e.g., Blansett v. Continental Airlines, Inc.*, 204 F.Supp.2d 999, 1000 (S.D.Tex.2002) (Kent, J.). Plaintiffs' allege the following: Shawn Blansett suffered a debilitating cerebral stroke approximately one hour before arriving in London. The stroke was ostensi-

nental filed a Motion for Judgment as a Matter of Law on Plaintiffs' Claims Based on Failure to Warn.[3] Continental's Motion asked this Court to dismiss the Blansetts' failure-to-warn claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to grant partial summary judgment against the Blansetts on these claims. On November 18, 2002, this Court denied Continental's Motion to Dismiss, determining that the Blansetts' failure-to-warn allegations stated a claim upon which relief can be granted. In the November 18, 2002 Order, this Court allowed the Blansetts an additional fifteen (15) days to respond to the Motion for Partial Summary Judgment. On December 3, 2002, the Blansetts timely responded to Continental's Motion for Partial Summary Judgment on Plaintiffs' Claims Based on Failure to Warn, and on December 9, 2002, Continental filed a Reply. The exhaustive briefing has thus placed the failure-to-warn issue squarely before the Court for appropriate dispositive analysis, and the Court thanks the Parties for their excellent advocacy. For the reasons articulated below, Continental's Motion for Partial Summary Judgment on Plaintiffs' Claims Based on Failure to Warn is respectfully **DENIED**.

## I.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See*

bly caused by a blood clot that formed during the lengthy flight, a phenomenon typically referred to as "Deep Venous Thrombosis Syndrome" or "Economy Class Syndrome." Continental never warned or advised Shawn Blansett of the likelihood of developing a blood clot in the lower extremities, nor allowed an onboard physician to examine or treat Shawn Blansett after he became visibly ill, nor consulted with any third-party medical advice service regarding Shawn Blansett's condition, nor relayed critical information to the London ambulance and hospital personnel that eventually treated Shawn Blansett. As a result of this stroke, 36–year–old Shawn Blansett, who was once an able-bodied husband, father, and corporate executive earning a six-figure salary, is now bound to a wheelchair, unable to walk or talk normally, or even take care of his own basic needs.

3. Plaintiffs allege that "[a]n 'accident,' meaning an unexpected or unusual event or happening external to plaintiff, occurred when Continental failed to warn, advise and/or take adequate precautions to inform about and/or prevent Deep Venous Thrombosis ('DVT') on its international flight. This action and/or inaction constituted an 'accident' under the [Warsaw] Convention because it was an unreasonable application of routine procedures or operations, was unexpected or unusual, was external to the plaintiff, and was not caused solely by plaintiff's own conduct or physical condition. Moreover, Continental had *actual* knowledge of the risk of contracting DVT during lengthy flights and failed to warn, advise and/or take adequate precautions to protect its passengers." Pls.' First Am. Comp. at ¶ 19. The Complaint further alleges that "[u]pon information and belief, it is the custom, rule and/or procedure among international long-haul air carriers to warn, advise and/or take adequate precautions to inform passengers of the risk of DVT. Accordingly, an 'accident' as that term is understood under the Warsaw Convention occurred when Continental failed to warn, advise and/or take adequate precautions to inform plaintiff of the risk of contracting DVT because such failure was an abnormal operation of the carrier and/or an unreasonable application of routine procedures and thereby unusual and unexpected." *Id.* at ¶ 20.

*id.,* 477 U.S. at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691, 694 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56. However, to meet its burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Id.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)).

## II.

■ This Court has already held that the Warsaw Convention, "an international treaty governing 'all international transportation of persons, baggage, or goods performed by aircraft for hire,' " provides the exclusive cause of action and remedy for the Blansetts' claims against Continental. *See Blansett v. Continental Airlines, Inc.,* 203 F.Supp.2d 736, 744 (S.D.Tex. 2002) (Kent, J.) (quoting *El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 162, 119 S.Ct. 662, 668, 142 L.Ed.2d 576 (1999)). In order to prevail on a claim under the Warsaw Convention, a plaintiff must prove that (1) an "accident" (2) "took place on board the aircraft or in the course of operations of embarking or disembarking," (3) which "caused" (4) an "injury." *McCaskey v. Continental Airlines, Inc.,* 159 F.Supp.2d 562, 569 (S.D.Tex.2001) (Kent, J.) (citing *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 535–36, 111 S.Ct. 1489, 1494, 113 L.Ed.2d 569 (1991)). In its November 18, 2002 Order, this Court determined that the Blansetts' allegation that an accident occurred when Continental failed to warn passengers on the transatlantic flight of the risk of developing Deep Venous Thrombosis ("DVT") stated a claim upon which relief can be granted. This Court's determination was based on case law holding that an airline's failure to carry out routine procedures in the usual manner can constitute an accident under the Warsaw Convention. *See, e.g., Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 143 (2d Cir.1998); *Fulop v. Malev Hungarian Airlines,* 175 F.Supp.2d 651, 669 (S.D.N.Y. 2001); *Husain v. Olympic Airways,* 116 F.Supp.2d 1121, 1134–35 (N.D.Cal.2000).

It was somewhat unclear in the Complaint whether the Blansetts were arguing that Continental's failure to warn about DVT was (1) a failure to follow its *own* routine procedures, (2) a failure to follow the routine procedures of the *industry*, or (3) both. The Blansetts' summary judgment Response makes clear that the failure-to-warn claims are based solely on Continental's failure to follow the alleged *industry* custom among international long-haul carriers to warn of the risk of DVT.[4]

▇▇▇▇ Based on this clarification, the Court briefly revisits whether failure to follow *industry* custom may constitute an accident. The United States Supreme Court has defined a Warsaw Convention accident as "an unusual or unexpected event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 1345, 84 L.Ed.2d 289 (1985). An airline's failure to carry out routine procedures in the usual manner may constitute an accident. *See, e.g., Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 143 (2d Cir.1998) (applying a hot compress to relieve ear pain, which is a routine procedure, can be an accident if the water is excessively hot); *Fulop v. Malev Hungarian Airlines*, 175 F.Supp.2d 651, 669 (S.D.N.Y.2001) (failing to divert an airplane when a passenger has a heart attack can be an accident if it "contravenes the airline's established customs, rules or procedures"); *Husain v. Olympic Airways*, 116 F.Supp.2d 1121, 1134–35 (N.D.Cal. 2000) (failing to allow an asthmatic passenger to move away from cigarette smoke, in contravention of industry standards and airline policies, is an accident). The *Fulop* and *Husain* courts clearly considered failure to properly carry out the routine procedures of the *industry* to be an accident. The *Husain* court stated:

> [u]nder no reasonable interpretation of the facts can one conclude that [the flight attendant's] failure to assist [the decedent] was expected or usual. The Court has heard extensive testimony on the *standard of care for flight attendants* in situations such as this, and concludes that [the flight attendant] acted in an unexpected and unusual manner in several respects.
>
> First, the *recognized standard of care for flight attendants during international air travel* demands that a flight attendant make efforts to accommodate a passenger who indicates that he or she needs to be moved for medical reasons . . . . .
>
> Third, not only did [the flight attendant's] failure to act violate the *industry standard of care*, it also violated Olympic Airways' policy.

*Husain*, 116 F.Supp.2d at 1132 (emphasis added). The *Husain* court repeatedly notes that the flight attendant's behavior was unusual and unexpected because she violated the "industry standard of care." *See, e.g., id.* at 1133 (reasoning that the decedent's expectation that he would be allowed to switch seats was even more reasonable "in light of the normal operating procedures of international carriers" and stating that the flight attendant violated the "industry standard of care" by failing to allow him to move). Similarly, the *Fulop* court states:

> [i]t also requires no reliance on authority to assert that, viewing the circumstances objectively as the *Saks* inquiry demands, the ordinary traveler reasonably would expect that-as the normal, usual and ex-

---

4. The Blansetts allege that "[a]bsolutely, evidence exists raising a genuine fact issue as to whether Continental violated the industry cus- tom of long-haul carriers by failing to warn its passengers of the risk of developing [DVT]." Pls.' Dec. 3, 2002 Resp. at p. 1.

pected response to such urgencies, and as a fair balancing of interests and risks characteristic of air travel-in handling life-threatening exigencies, airlines rendering services as common carriers would be particularly scrupulous and exacting in complying with their own *industry norms*, internal policies and procedures, and general standards of care.

*Fulop*, 175 F.Supp.2d at 665 (emphasis added). Although *Husain*'s and *Fulop*'s accident analyses were based on violations of the airlines' internal procedures *and* violations of industry customs, this Court specifically concludes that an airline's violation of an industry standard of care, alone, can be "an unusual or unexpected event or happening that is external to the passenger," *see Saks*, 470 U.S. at 405, 105 S.Ct. at 1345, and thus, an "accident." To hold otherwise would have the ironic result of rewarding individual airlines for adopting an "ostrich" approach of failing to institute routine safety procedures in compliance with generally recognized industry standards of care. Safety in a technically evolving industry, such as air travel, can and *must* keep up with reasonable and practical industry practices. This is especially true where, as here, no real expense is even involved. This case does not require an expensive or intrusive retrofit or equipment exchange. It involves nothing more than the reprinting of safety placards and a thirty-second oral announcement once or twice in each long flight.

### III.

■ Under the Federal Rules of Civil Procedure, an affidavit opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). An expert's affidavit may raise a material question of fact if the expert sets forth more than mere conclusory opinions. *See Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 25–26 (2d Cir.1994). In addition, an affidavit stating the facts upon which an expert relies can satisfy Rule 56(e) even if the corresponding data ' is not attached. *See id.* at 25.

■ The Blansetts present the sworn affidavit of aviation health expert Farrol Kahn, director of the Aviation Health Institute, to establish a fact issue regarding the existence of an industry custom to warn of the risk of DVT.[5] Mr. Kahn states, "In my opinion, at the time of Mr. Blansett's injury, Continental, by providing no information, warning or advice regarding DVT in any form, manner or medium, violated international aviation industry custom." Aff. of Farrol Kahn at ¶ 16.

---

5. The Blansetts present Mr. Kahn as an expert on aviation health and the aviation industry, specifically the aviation industry's response to DVT. In its Reply, Continental questions Mr. Kahn's qualifications, stating that "[t]he credentials submitted by Mr. Kahn fail to demonstrate that he is a qualified expert in many, if not all, of the subjects on which he opines." Def.'s Dec. 9, 2002 Reply at p. 4 n. 5. In his affidavit, Mr. Kahn identifies numerous publications he has authored and presentations he has made to various bodies including the World Health Organiza-

tion and the British Parliament regarding DVT and the aviation industry. In addition, Mr. Kahn is a delegate to the World Health Organization's Deep Venous Thrombosis study. For the purposes of this Motion, this Court concludes that Mr. Kahn's knowledge and experience regarding DVT and the aviation industry make his opinions on the subject manifestly relevant and reliable. *See* Fed.R.Evid. 702; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).

Mr. Kahn presents a memorandum issued *months before* Shawn Blansett's injury by the International Air Transport Association ("IATA")[6] recommending that its members inform passengers of the risk of DVT and of ways to avoid developing DVT.[7] In addition, Mr. Kahn states that at the time of Shawn Blansett's stroke in June of 2001, five of the ten most-traveled international airlines, as well as other less-traveled airlines, provided information to passengers regarding the risk of DVT.

Accepting all of the evidence and drawing all justifiable inferences in the Blansetts' favor, this Court determines that a reasonable fact-finder, a jury in this case, could determine that Continental's failure to warn passengers on its transatlantic flight of the risk of DVT was an unexpected and unreasonable deviation from routine industry procedure, and thus, an accident under the Warsaw Convention. In this rapidly emerging area of law and medicine, a full adjudication of the issues, enhanced by the wisdom and guidance provided by a jury of the Parties' peers, is needed to resolve this important question.

### IV.

For all of the reasons set forth above, the Court hereby respectfully **DENIES** Defendant Continental Airlines, Inc.'s Motion for Partial Summary Judgment on Plaintiffs' Claims Based on Failure to Warn. Each Party is to bear its own taxable costs and expenses incurred herein to

date, regarding any matter treated in this Order.

**IT IS SO ORDERED.**

6. The IATA is an industry association of 280 international air carriers, comprising 95% of scheduled international air travel. Continental is a member of the IATA.

7. The February 8, 2001 press release states that "[a]t the time of reservation, travellers should be" informed of the risks of DVT and encouraged to seek medical advice if they

have certain risk factors. In addition, "[p]rior to boarding and again on board, passengers should be encouraged" to take certain precautionary measures, such as drinking non-alcoholic fluids, wearing loose clothing, and performing exercises in their seats, to avoid developing DVT.