United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 21, 2004**

Charles R. Fulbruge III
Clerk

# United States Court of Appeals
## for the Fifth Circuit

_____

m 03-40545

_____

MICHAEL SHAWN BLANSETT;
MODESTA N. BLANSETT,
AND AS NEXT FRIEND OF MCKENNA BLANSETT, AS NEXT FRIEND OF BLAKE BLANSETT,
INDIVIDUALLY, AND MINORS,

Plaintiffs-Appellees-
Cross-Appellants,

VERSUS

CONTINENTAL AIRLINES, INC.,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

Before SMITH and DENNIS, Circuit Judges,
and LYNN,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

I.

On June 18, 2001 plaintiff Michael "Shawn" Blansett traveled from Houston, Texas, to London, England on a flight operated by Continental Airlines, Inc. ("Continental"). During flight, he suffered an episode of deep vein thrombosis ("DVT"), resulting in a cerebral stroke that left him permanently debilitated. DVT involves the clotting of blood in the extremities and creates a threat of death or disability if a clot migrates to the lungs or other vital organs.

The likelihood of a DVT injury is heightened by the pressurized conditions aboard an airliner, especially during long flights, though experts believe that passengers may undertake precautionary measures to reduce the risk. Many international carriers have added DVT warnings to their battery of pre-flight instructions to passengers, though at the time of Blansett's flight, Continental had not. Federal regulations do not require that air carriers issue any such warnings, though at the time of Blansett's flight, the International Air Transport Association, a trade association, had recommended that airlines implement a long schedule of instructions to passengers on the risks of DVT.

Blansett and his close relations sued Continental, alleging that it was liable for Blansett's injury under article 17 of the Warsaw Convention, to which the United States is a signatory. Under article 17, an airline is responsible for injuries to passengers on an international flight where the injury results from an "accident." The district court denied Continental's motion to dismiss under FED. R. CIV. P. 12(b)(6), concluding that if Continental's failure to provide DVT warnings and instructions was an "unreasonable deviation from industry standards," it would be an "accident" under the Convention. We now consider Continental's interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), on the issue of article 17's proper meaning and application.

We review a rule 12(b)(6) ruling *de novo*. *See, e.g., Lowery v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997). We assume the truth of all pleaded facts and review purely legal issues *de novo*. Concluding that Continental's failure to provide DVT warnings and instructions could not have constituted an "accident" under article 17, we reverse and remand.

II.

Article 17 imposes liability on an air carrier for a passenger's death or bodily injury in connection with an international flight. It provides in relevant part:

The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. 3000, 1934 WL 29042.

The pertinent question, as we have said, is whether Continental's failure to provide warn-

---

[*] District Judge of the Northern District of Texas, sitting by designation.

2

ings and instructions concerning DVT could have constituted a covered "accident" under article 17. Because the Convention was written in French and against the background of French law, the Supreme Court has looked to French law to interpret the meaning of "accident" in article 17. *Air France v. Saks*, 470 U.S. 392, 400 (1985). In French law, "accident" is usually given to mean a "fortuitous, unexpected, unusual, or unintended event." *Id*. The Court noted, accordingly, that an accident under article 17 is an "unexpected or unusual event. . . ." *Id*.

The Convention speaks of an "accident which caused" an injury rather than an accident that *is* an injury. *Id*. at 398. Accordingly, a qualifying "unusual or unexpected event" must be distinct from "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Id*. at 405, 406. For instance, where normal pressurization of the aircraft hull caused hearing damages to an unusually sensitive passenger, the occurrence of the injury was not an "accident," however unusual or unexpected. *Id*. An "unusual or unexpected event" that qualifies under article 17 must be part of the "chain of causes" leading to an injury. *Id*. at 406. So, it need not account wholly for the injury but must have been a significant part of the cause.

In *Husain v. Olympic Airways*, 124 S. Ct. 1221, 1227-30 (2004), the Court concluded that, under some circumstances, an "accident" may constitute an omission or refusal to act. In *Husain*, a passenger with an allergy to smoke asked to be reseated when smoke from another section of the plane impinged his seat in a nominally smoke-free area. The crew refused three times to reseat him, even though other seats were available, and as a result of

the smoke, he suffered an allergic reaction and died. The Court held that the airline's refusals constituted a qualifying "unusual or unexpected event" under article 17. *Id*. at 1230.

III.

The situation in the instant case differs markedly from that in *Husain*. Here, no request was made of the airline; the flight staff was entirely passive. The Supreme Court noted that facts similar to those here are at least distinguishable from those in *Husain*. Justice Scalia's dissent, *id.* at 1230, 1231 (Scalia, J., dissenting), pointed to decisions in several foreign jurisdictions concluding that a failure to warn and instruct of DVT risks is not an "event" under article 17. The Court stated that the failure to give warning in the foreign Warsaw Convention cases involving DVT, as distinguished from a specific refusal to lend requested aid in *Husain*, was enough to prevent conflict between them. *Id*. at 1229 n.9.

That is to say, the Court specifically left open the question now before us, even as it supplied the general rules for the detection of qualifying "accidents" under article 17. In this case, as the Court did in *Husain*, we consider whether certain omissions may constitute an "accident" under article 17.

The district court held, "An airline's violation of an industry standard of care, alone, can be an 'unusual or unexpected event or happening that is external to the passenger,' . . . and thus an 'accident.'" *Blansett v. Cont'l Airlines, Inc.*, 246 F. Supp. 2d 596, 601 (S.D. Tex. 2002). Accordingly, the court would have left it to the jury to determine whether Continental's failure to provide the suggested DVT warnings was an "unexpected and unreasonable departure from routine industry procedure," and thus necessarily an accident

under the Convention. *Id.* at 602. In so holding, the court wished to compel airlines to "keep up with reasonable and practical industry practices." *Id.* at 601.

In allowing a finding of an "unreasonable" departure from "airline standards" to establish an unusual and unexpected event, the district court's approach resembles that of the Ninth Circuit, which held, in its iteration of *Husain* that preceded the Supreme Court's review, that "[t]he failure to act in the face of a known, serious risk satisfies the meaning of 'accident' within Article 17 so long as *reasonable alternatives exist that would substantially minimize the risk and implementing these alternatives would not interfere with the normal, expected operation of the airplane.*" *Husain v. Olympic Airways*, 316 F.3d 829, 837 (9th Cir. 2002) (emphasis added), *aff'd*, 124 S. Ct. 1221 (2004).[2] The latter part of this formulation echoes formulations of the law of negligence in torts. Although the Supreme Court ultimately affirmed that Olympic Airways' refusal to aid the plaintiff was an "accident," the Court declined to base its analysis on language of reasonableness or unreasonableness.

Likewise, we reject the district court's use of an "unreasonable departure" approach here. Inasmuch as the court called for the consideration whether Continental's conduct was an accident merely because it was "unreasonable," it was in error.

The Blansetts accept that the district court's choice of language was inapt, but they argue nonetheless that they can demonstrate that Continental's failure to give DVT warnings was an "unusual and unexpected event" merely because it was departure from standard practice within the airline industry. For purposes of this appeal, we assume the truth of the Blansetts' allegation that Continental's failure to provide DVT warnings as part of its battery of pre-flight instructions is a departure from an "industry standard."

As we have said, the Supreme Court has held that some kinds of inaction can constitute an "accident." In *Husain*, specific refusals to render requested aid constituted an "unexpected or unusual event." We take note also of the Court's mention of the example proffered by the district judge *a quo* in another case, in which he speculated that it would be an "unusual and unexpected event" if an air crew decided not to divert a flight to save the life of a passenger who suddenly became ill. *Husain*, 124 S. Ct. at 1229 (citing *McCaskey v. Cont'l Airlines, Inc.*, 159 F. Supp. 2d 562, 574 (S.D. Tex. 2001)). In *Husain*[3] and the *McCaskey* hypothetical, unusual circumstances

---

[2] *See also Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 665 (S.D.N.Y. 2001) ("Any major deviation from a standard articulated in recognized practices and procedures represents the exceptional case—the unusual or unexpected happening.")

[3] As the United Kingdom Court of Appeals observed with respect to *Husain*,

[t]he refusal of the flight attendant to move Dr. Hanson cannot properly be considered *mere inertia, or a non-event*. It was a refusal to provide an alternative seat which formed part of a more complex incident, whereby Dr. Hanson was exposed to smoke in circumstances that can properly be described as unusual and unexpected." *Deep Vein Thrombosis & Air Travel Litig.*, 2003 WL 21353471, ¶ 50 (emphasis added); *see also Qantas Ltd. v. Povey*, [2003] VSCA 227, ¶ 17, 2003 WL 23000692, ¶ 17 (Dec. 23, 2003).

existed to elevate the willing inaction of airline personnel from mere inertia SSfrom a *non-event*SSto an event both "unexpected and unusual."[4]

No such circumstances were thrust on the flight crew in the present case, and their compliance with the regular policy of their airline was hardly unexpected. Rather, the Blansetts allege that the "unexpected" nature of the alleged event arose not from the choices of the flight attendants, but from the Continental policymakers who decided not to mandate DVT warnings on Continental flights.

The Blansetts reason that though this decision occurred at a time and place distant from Blansett's flight, article 17 is to be "applied flexibly" after "assessment of all the circumstances surrounding a passenger's injuries . . . ." *See Saks*, 470 U.S. at 405. It is appropriate to consider the deliberate perpetuation of company-wide policies as potential "events" within the context of the individual flights in which they are given effect. We may accordingly compare the instructions given on Continental flights with those customarily given within the airline industry generally, in gauging whether Continental's deliberate choice was "unusual and unexpected."

Again, we assume, for purposes of this appeal, that a failure to warn of DVT is a departure from "an industry standard of care."[5] But, we will not depart from the demonstrated will of the Supreme Court by creating a *per se* rule that any departure from an industry standard of care must be an "accident." In *Husain*, 124 S. Ct. at 1230, the Court again emphasized that the appropriate test for article 17's application under every set of relevant facts is whether there was an "unexpected or unusual event." Some departures from an "industry standard" might be qualifying accidents under Article 17, and some may not.

Continental's failure to warn of DVT was not an "unusual or unexpected event" and not a qualifying "accident." Though many international carriers in 2001 included DVT warnings, it is undisputed that many did not. Moreover, Continental's battery of warnings was in accord with the policies of the Federal Aviation Administration ("FAA"), which prescribes what warnings airlines should issue to passengers.

In *Witty v Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004), we held that the warnings reasonably required to be made by an airline are those enumerated by the FAA, and no others.[6] We noted that the balance of warnings

---

[4] Judge Dennis disagrees with the mere inertia/inertia plus unusual circumstances dichotomy drawn by the majority because: (1) it is not necessary to the resolution of this case, (2) the Supreme Court left the issue open in *Husain*, and (3) the potential ramifications of distinguishing between different types of inaction are not clear.

[5] As the district court noted, he relied on the testimony of an expert witness, Farrol Kahn, who was of the opinion that failure to provide DVT warnings departed from industry custom. *McCaskey*, 246 F. Supp. 2d at 601. Kahn noted that at the time of Blansett's injury, five of the ten most-traveled international airlines provided information and instructions to passengers about DVT. *Id*. at 602.

[6] "[F]ederal regulations do not require warnings to passengers about the risks of DVT or methods for preventing this condition." *Witty*, 366 F.3d at 385. Therefore, we concluded that in a negligence

required by the government is the product of its careful judgment. For example, "Any warning that passengers should not stay in their seats, but should instead move about to prevent DVT, would necessarily conflict with any federal determination that, all things considered, passengers are safer in their seats." *Id*. at 385. We noted also that the courts' requirement of other warnings would dilute the impact of warnings that are required by the FAA.

Though *Witty* does not decide this case, because its lesson directly applies only to negligence causes of action, it is nonetheless instructive. It was not an unexpected or unusual decision for Continental merely to cleave to the exclusive list of warnings required of it by the agency that has regulatory jurisdiction over its flights.

Ultimately, no jury may be permitted to find that Continental's failure to warn of DVT constituted an "accident" under article 17. Continental's policy was far from unique in 2001 and was fully in accord with the expectations of the FAA. Its procedures were neither unexpected nor unusual.

The order appealed from is REVERSED, and this matter is REMANDED.

---

action, an airline "cannot be held liable for failing to provide warnings or instructions." *Id*.