**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GUY CAMAN, an individual,
        *Plaintiff-Appellant,*

        v.

CONTINENTAL AIRLINES, INC.,
        *Defendant-Appellee.*

No. 03-56810

D.C. No.
CV-02-08958-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
February 15, 2006—Pasadena, California

Filed August 2, 2006

Before: Betty B. Fletcher and Consuelo M. Callahan,
Circuit Judges, and Morrison C. England, Jr.,
District Judge.*

Opinion by Judge England

---

*The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

## COUNSEL

Clay Robbins III, Los Angeles, California, argued the cause for the appellant.

William J. Boyce, Houston, Texas, argued the cause for the appellee. With him on the briefs were Rachel G. Clingman, Houston, Texas, and Jeffrey A. Worthe, Santa Ana, California.

## OPINION

ENGLAND, Circuit Judge:

This action is brought pursuant to Article 17 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, art. 17, 49 Stat.

3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C. § 40105 ("Warsaw Convention" or "Convention"). The parties agree, and we concur, that this action is governed exclusively by the Warsaw Convention. The scope of our review is limited to whether appellant Guy Caman ("Caman") can establish liability against appellee Continental Airlines ("Continental") under the Convention.[1] We hold that the district court properly granted summary judgment in favor of Continental on the ground that Continental's failure to warn Caman of the possibility of developing Deep Vein Thrombosis ("DVT") during the course of an international flight does not constitute an "accident" under the Warsaw Convention. Accordingly, we affirm.

## BACKGROUND

Caman alleges that he developed DVT while on board an international flight operated by Continental. Caman's axial argument is that Continental's failure to advise him of the risk of DVT, which can result from immobility, dehydration and being cramped in a small pitch seat over the course of an international flight, constitutes an "accident" for purposes of establishing liability under the Warsaw Convention.

The following facts are uncontested. On May 28, 2002, Caman departed from Los Angeles, California, on a flight bound for Paris, France. The flight was uneventful with no equipment malfunction or other anomaly occurring. Caman did not receive any warning regarding the potential hazard of developing DVT on his international flight. During the course of his air travel, up to and including his disembarkation from the aircraft, Caman did not request any assistance or other accommodation from Continental personnel. Upon his arrival

---

[1]A passenger whose injury is not compensable under the Warsaw Convention because it entails no "bodily injury" or was not the result of an "accident" will have no recourse to an alternate remedy. *El Al Isr. Airlines v. Tseng*, 525 U.S. 155, 160-61 (1999).

in France, Caman found it difficult to walk on his right leg and immediately sought medical attention. He was diagnosed with DVT and was admitted to a hospital where he remained for three days. He received therapy amounting to injections several times a week for the next month.

## STANDARD OF REVIEW

Caman appeals the district court's grant of summary judgment in favor of Continental. We review the district court's grant of summary judgment de novo. *Carey v. United Airlines*, 255 F.3d 1044, 1047 (9th Cir. 2001). Interpretations of treaties, such as the Warsaw Convention, are questions of law that are also reviewed de novo. *Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 993 (9th Cir. 2002).

## ANALYSIS

**[1]** Caman seeks review of the lower court's ruling that an air carrier's failure to warn passengers of the risk of developing DVT during international air travel is not an "accident" for purposes of Article 17 liability. Article 17 of the Warsaw Convention imposes liability on an air carrier for a passenger's death or bodily injury caused by an "accident" that occurred in connection with an international flight. *Olympic Airways v. Husain*, 540 U.S. 644 (2004). The term "accident" in the Warsaw Convention has been defined as an "unexpected or unusual event or happening that is external to the passenger," and not "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Air France v. Saks*, 470 U.S. 392, 405-06 (1985).

**[2]** It is well settled that the development of DVT as the result of international air travel, without more, does not constitute an "accident" for purposes of Article 17 liability. *See, e.g., Rodriguez v. Ansett Austl. Ltd.*, 383 F.3d 914, 919 (9th Cir. 2004); *Scherer v. Pan Am. World Airways, Inc.,* 54 A.D.2d 636, 387 N.Y.S.2d 580, 581 (App. Div. 1976). Gener-

ally, courts reach this conclusion because the development of DVT is nothing more than a passenger's own internal reaction to the usual, normal, and expected operation of the aircraft. *Rodriguez*, 383 F.3d at 917. Since the development of DVT itself does not constitute an Article 17 "accident," Caman would have us conclude that Continental's failure to warn him of the risk of DVT constitutes an Article 17 "accident." While this issue has been expressly decided by a sister circuit as well as by sister signatories to the Warsaw Convention, it is an issue of first impression in this circuit. Given the narrow ambit of the issue coupled with the unsettled state of the law, a brief recitation of both controlling precedent as well as related domestic cases follows.

I.

The seminal case on the issue of what constitutes an accident under Article 17 of the Warsaw Convention is *Air France v. Saks*, 470 U.S. 392. In *Saks*, an airline passenger became permanently deaf in one ear after experiencing severe pain and pressure in that ear during the plane's descent into Los Angeles en route from Paris. The plaintiff sued the air carrier under the Warsaw Convention, contending that her injury was the result of an "accident" occurring during her international flight. Justice O'Connor delivered the opinion of the Court and held that Article 17 liability arises only if a passenger's injury is caused by an "unexpected or unusual event or happening that is external to the passenger." *Id.* at 405. The conditions precedent to Article 17 liability are as follows: 1) an unexpected or unusual event; 2) external to the passenger; 3) that causes the plaintiff's injury. *See id.; see also Rodriguez*, 383 F.3d at 917.

**[3]** Nearly two decades after *Saks* was decided, the Supreme Court revisited the question of what constitutes an Article 17 "accident." *Husain*, 540 U.S. 644. In *Husain*, a passenger severely allergic to tobacco smoke suffered a fatal asthma attack after the flight attendant repeatedly refused to

assist him in finding a seat further away from the plane's smoking section. *Id.* at 653. With respect to whether the flight crew's refusal to reseat the decedent was "unusual or unexpected," the Court expressly declined to decide the question.[2] *Id.* at 653. Instead, the Court adopted the district court's finding that the air crew's departure from relevant industry standard was unusual or unexpected conduct satisfying part of the first condition precedent. *Id.* at 652-53. Next, the Court considered whether inaction can constitute an "event" for purposes of Article 17 liability. The Court rejected Olympic Airways' argument that only affirmative conduct can constitute an "event" under Article 17. In dismissing that argument, the majority of the Court concluded that the air crew's failure to assist, or inaction, can constitute an Article 17 "event." *Id.* at 654-57. With respect to the element of causation, the Court concluded that the failure of the air crew to reseat the decedent together with exposing him to smoke were each links in the causal chain leading to his expiration and entitling his wife, the plaintiff, to relief. *Id.* at 654.

In *Blansett v. Continental Airlines, Inc.*, 379 F.3d 177 (5th Cir. 2004), the plaintiff sought relief on the identical theory presented here. Namely, Blansett argued that the airline's failure to warn him of the potential for developing DVT is an Article 17 "accident" because the decision not to warn passengers of a known risk is a departure from industry standard and is, therefore, unexpected.[3] *Id.* at 181. Based in part on

---

[2]The Supreme Court's discussion of this issue in *Husain* is as follows: "As an initial matter, we note that petitioner did not challenge in the Court of Appeals the District Court's finding that the flight attendant's conduct in three times refusing to move [the passenger] was unusual or unexpected in light of the relevant industry standard or petitioner's own company policy. . . . Consequently, we need not dispositively determine whether the flight attendant's conduct qualified as 'unusual or unexpected' under *Saks*, but may assume that it was for purposes of this opinion." *Husain*, 540 U.S. at 652-53.

[3]This argument is directly drawn from the *Husain* decision. As noted *supra*, the *Husain* Court expressly declined to decide whether the refusal to assist a passenger was "unexpected." *See* n.2, *supra*. Rather, the Court adopted the district court's reasoning that the departure from industry standard made the air crew's conduct "unexpected." *Husain*, 540 U.S. at 653.

*Husain*'s reasoning that inaction can constitute an event, the plaintiff urged that the air carrier's failure to warn also comprised an Article 17 "event." *Id.*

The *Blansett* court carefully abstained from creating a *per se* rule that any departure from an industry standard constitutes an Article 17 "accident." *Id.* at 182. Instead, the court pointed to the absence of any Federal Aviation Administration requirement that warnings of DVT be issued on international flights as evidence that a failure to warn of DVT is not "unexpected" and, therefore, outside the scope of Article 17. As the court explained in summation, "[i]t was not an unexpected or unusual decision for Continental merely to cleave to the exclusive list of warnings required of it by the agency that has regulatory jurisdiction over its flights." *Id.*

In *Rodriguez* this court addressed circumstances very similar to those presented here. Specifically, we considered first whether developing DVT can constitute an Article 17 "accident," and second, whether a failure to warn of the risk of DVT can constitute an Article 17 "accident." 383 F.3d 914. On the merits of the first claim, we concluded that "there was no event external to the passenger, let alone an unusual or unexpected event." *Id.* at 918. As to the failure to warn claim, we declined to decide whether failure to warn of DVT can constitute an "accident." *Id.* at 919. Rather, we decided that Rodriguez had failed to create a genuine issue of material fact by failing to submit evidence establishing the industry custom or the airline's own policy, and failing to establish whether the airline complied with either the industry standard or its own company policy. *Id.*

The foregoing decisions have left unresolved certain issues salient to this court's inquiry. Specifically, whether an air carrier's departure from either industry standard or its own company policy are the appropriate benchmark for determining whether an event is "unexpected or unusual" conduct under

Article 17[4] and, more importantly, whether the inaction alleged here is sufficient to constitute an Article 17 "event."

## II.

[4] The starting point of our analysis is, of course, the text of the Convention and the context in which the written words are used. *Saks*, 470 U.S. at 396-97. The text of Article 17 is as follows:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Art. 17, 49 Stat. 3018. The foregoing language clearly establishes the liability of international air carriers for accidents resulting in harm to passengers sustained during any operations of the aircraft. Conversely, Article 20(1) provides a defense for air carriers. The language of Article 20(1) is as follows:

> The carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures.

Art. 20, 49 Stat. 3019.

With respect to considering these two Articles, the

---

[4]We recognize that there are questions as to whether an air carrier's departure from an industry standard or its own company policy is "unexpected" for the purpose of defining an Article 17 "accident." We decline to address this question as our holding today does not turn on the resolution of that issue.

Supreme Court explained that "[t]he 'accident' requirement of Article 17 is distinct from the defenses in Article 20(1), both because it is located in a separate article and because it involves an inquiry into the nature of the event which *caused* the injury rather than the care taken by the airline to avert the injury." *Saks*, 470 U.S. at 407. The Court went on to clarify that, while these two inquiries may on occasion be similar, courts should decline to employ that similarity to repeal Article 20(1). *Id.* Attributing liability to an air carrier for failing to do all it can to prevent an injury that is inherent in air travel, as Caman is here requesting, improperly shifts the focus of the inquiry from the nature of the event which caused the injury to the alleged failure of the air carrier to avert the same. In addition, interpreting the term "accident" to include a failure to warn of a possible risk of flight would incorporate into Article 17 an inquiry that is properly left to analysis under Article 20(1) once it has been established that an accident has occurred. *Husain*, 540 U.S. at 649 n.5 ("*After* a plaintiff has established a prima facie case of liability under Article 17 by showing that the injury was caused by an 'accident,' the air carrier has the opportunity to prove under Article 20 that it took 'all necessary measures to avoid the damage or that it was impossible for [the airline] to take such measures.' " (quoting 49 Stat. 3019) (alteration in original) (emphasis added)).

**[5]** Applying the treaty's text and Supreme Court precedent to the facts of this case, we hold that Caman cannot establish his DVT was the result of an "accident" because he cannot show that it resulted from an "unexpected or unusual event." *Saks*, 470 U.S. at 404, 406. Specifically, we hold that Continental's failure to warn Caman of DVT is not an "event" as that term is discussed in *Saks* and *Husain*. Rather, Continental's failure to warn was an act of *omission* (inaction that idly allows an unfolding series of events to reach their natural conclusion) as opposed to an act of *commission* (inaction that produces an effect, result or consequence) as in *Husain*'s rejection of a direct plea for help.

**[6]** For the foregoing reasons, we conclude that Continental's failure to warn Caman of the risk of developing DVT is not an Article 17 "accident." Accordingly, he cannot obtain relief under the Warsaw Convention.

**AFFIRMED**.