383 F.3d 914
 Adriene RODRIGUEZ, an individual, Plaintiff-Appellant,
v.
ANSETT AUSTRALIA LTD., Defendant, and
Air New Zealand Ltd. (USA), esa Air New Zealand Ltd.; Air New Zealand International, esa Air New Zealand Ltd., Defendants-Appellees.
 No. 02-56473.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 2004.
 Filed September 3, 2004.
 
 Clay Robbins III, Magana, Cathcart & McCarthy, Los Angeles, CA, for the plaintiff-appellant.
 Roderick D. Margo, Condon & Forsyth LLP, Los Angeles, CA, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; John F. Walter, District Judge, Presiding. D.C. No. CV 01-07882 JFW.
 Before: THOMAS G. NELSON, A. WALLACE TASHIMA, and RAYMOND C. FISHER, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 We are called upon once again to construe the meaning of the term "accident," as it is used in the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in note following 49 U.S.C. § 40105 (the "Warsaw Convention" or the "Convention"). We hold that neither the plaintiff's development of deep vein thrombosis ("DVT") nor the airline's failure in this case to warn of the risks of developing DVT during air travel constitutes an accident for purposes of the Warsaw Convention.[1] We therefore affirm the order of the district court granting summary judgment in favor of the defendants (collectively "Air New Zealand"). We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 BACKGROUND
 
 2
 On September 30, 2000, Adriene Rodriguez was a passenger aboard an Air New Zealand flight from Los Angeles to Melbourne, Australia, with a layover in Auckland, New Zealand. Rodriguez slept for the duration of the twelve-hour flight; she did not eat or leave her seat during the flight to Auckland.
 
 
 3
 When the plane arrived in Auckland, Rodriguez began to walk toward the exit of the aircraft. She began to feel dizzy and out of breath and then collapsed in the jetway immediately outside the plane. When she regained consciousness, she was taken to the waiting area near the gate and realized she had lost the ability to speak and to control her right arm.[2]
 
 
 4
 She was transported to a hospital in Auckland, where doctors informed her that she had suffered a DVT during the flight, resulting in a pulmonary embolism, meaning that the blood clot that had formed during the flight had broken into smaller clots that were then lodged in her lungs. After five days in Auckland, the doctors informed Rodriguez that she could fly to Melbourne. During the flight from Auckland to Melbourne, Rodriguez followed her doctor's recommendations to walk about the cabin and drink plenty of water, and she arrived in Melbourne without incident. Rodriguez continued under a physician's care in Australia.
 
 
 5
 In this action, Rodriguez alleges that her DVT was caused by an "accident" within the meaning of the Warsaw Convention and that it was caused by the conduct of Air New Zealand. Rodriguez alleges that Air New Zealand negligently operated the aircraft, proximately causing her injuries. Her second cause of action alleges that Air New Zealand engaged in willful misconduct by intentionally violating safety procedures, failing properly to design the aircraft, and failing to advise passengers of the risks of developing DVT during long flights.
 
 
 6
 Air New Zealand moved for summary judgment, contending that Rodriguez's DVT was not an accident for purposes of the Convention. The district court granted Air New Zealand's motion on the basis that Rodriguez did not develop DVT as a result of an accident within the meaning of the Warsaw Convention, as interpreted by the Supreme Court in Air France v. Saks, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985).[3] Rodriguez filed a timely notice of appeal.
 
 STANDARD OF REVIEW
 
 7
 The district court's grant of summary judgment is subject to de novo review. Carey v. United Airlines, 255 F.3d 1044, 1047 (9th Cir.2001). "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law." Wyler Summit P'ship v. Turner Broadcasting Sys., Inc., 235 F.3d 1184, 1191 (9th Cir.2000). The district court's interpretation of the Warsaw Convention is reviewed de novo. Hosaka v. United Airlines, Inc., 305 F.3d 989, 993 (9th Cir.2002), cert. denied, 537 U.S. 1227, 123 S.Ct. 1284, 154 L.Ed.2d 1089 (2003).
 
 DISCUSSION
 
 8
 "The Warsaw Convention is a comprehensive international treaty, signed in 1929, governing liability in `all international transportation of persons, baggage, or goods.'" Carey, 255 F.3d at 1047 (quoting Warsaw Convention, art. 1(1)). The Convention's purpose is "to create a uniform body of law governing the rights and responsibilities of passengers and air carriers in international air transportation." Maugnie v. Compagnie Nationale Air France, 549 F.2d 1256, 1258 (9th Cir.1977). Article 17 of the Convention "establishes the liability of international air carriers for harm to passengers." Saks, 470 U.S. at 397, 105 S.Ct. 1338. Article 17, the only article at issue in this case, provides as follows:
 
 
 9
 The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
 
 
 10
 Warsaw Convention, art. 17. Thus, Rodriguez must establish that an "accident" was the cause of her injuries in order to hold Air New Zealand liable under Article 17. Saks, 470 U.S. at 396, 105 S.Ct. 1338.
 
 
 11
 In Saks, the Supreme Court addressed the definition of the term "accident" for purposes of Article 17. Because the Warsaw Convention was "drafted in French by continental jurists," the Court looked to the French legal meaning of "accident" and concluded that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." Id. at 399, 405, 105 S.Ct. 1338.
 
 
 12
 The passenger in Saks became permanently deaf in her left ear after experiencing severe pressure and pain in the ear while the aircraft was descending. The evidence indicated that the plane's pressurization system had operated in the usual manner. The Court concluded that the hearing loss was not an accident for purposes of Article 17 because it resulted from "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." Id. at 406, 105 S.Ct. 1338.
 
 
 13
 In this case, Rodriguez does not allege any "unexpected or unusual event or happening ... external to" herself that contributed to her development of DVT. Id. at 405, 105 S.Ct. 1338. In fact, there is no question that the aircraft on which Rodriguez incurred her injury was operating under normal conditions. Rather, as in Saks, her injury was caused by her "own internal reaction to the usual, normal, and expected operation of the aircraft." Id. at 406, 105 S.Ct. 1338; cf. Scherer v. Pan Am. World Airways, Inc., 54 A.D.2d 636, 387 N.Y.S.2d 580, 581 (App.Div.1976) (holding that there was no accident for purposes of Article 17 where the plaintiff's thrombophlebitis[4] "result [ed] from merely `sitting' aboard a Pan Am flight from Tokyo to California").
 
 
 14
 Rodriguez attempts to distinguish her case on the basis that prior to boarding the flight, she did not have the condition which is the subject of this action. In its analysis, however, Saks did not rely on the lack of or the existence of any preexisting medical condition. Rodriguez's lack of a preexisting condition accordingly does not affect our conclusion.
 
 
 15
 Rodriguez also raises several policy considerations in urging us to reverse the district court's grant of summary judgment. She points, first, to the purpose of the Warsaw Convention, relying on Day v. Trans World Airlines, Inc., 528 F.2d 31 (2d Cir.1975), which states that "the protection of the passenger ranks high among the goals" of the Warsaw Convention. Id. at 37; see also Maugnie, 549 F.2d at 1259 (stating that "the Convention functions to protect passengers from the hazards of air travel and also spreads the accident cost of air transportation among all passengers"). Even acknowledging that one of the purposes of the Warsaw Convention is to protect passengers, however, the question remains whether Rodriguez's injury was caused by an accident within the meaning of the Convention. Rodriguez's DVT clearly is the type of internal reaction to the normal operation of the aircraft, with no unusual external event, that is not an accident under Saks.
 
 
 16
 Rodriguez also urges an expansive reading of the causal relationship required between the "unexpected or unusual event" and the operation of the aircraft, arguing that Saks left open the question of whether the alleged injury must be causally related to the operation of the aircraft. See Gezzi v. British Airways PLC, 991 F.2d 603, 605 n. 4 (9th Cir.1993) (per curiam) (noting that "[i]t is not clear whether an event's relationship to the operation of an aircraft is relevant to whether the event is an `accident'" because Saks "did not state that an `accident' must relate to the operation of an aircraft"). Rodriguez relies on Fulop v. Malev Hungarian Airlines, 175 F.Supp.2d 651 (S.D.N.Y.2001), and the decision of the district court in Husain v. Olympic Airways, 116 F.Supp.2d 1121 (N.D.Cal.2000), aff'd, 316 F.3d 829 (9th Cir.2002), aff'd, 540 U.S. 644, 124 S.Ct. 1221, 157 L.Ed.2d 1146 (2004), both of which discussed the causation issue. Even if we were to adopt a liberal construction of the causal relationship required between the injury and the operation of the aircraft, however, Rodriguez still must show that her injury was caused by an unexpected or unusual event, and this she has not done. See Husain, 540 U.S. at ___-___, 124 S.Ct. at 1228-29 (stating that "[t]he relevant `accident' inquiry under Saks is whether there is `an unexpected or unusual event or happening'" (quoting Saks, 470 U.S. at 405, 105 S.Ct. 1338)).
 
 
 17
 Rodriguez attempts to place her case within the same category as Fulop and Husain, arguing that her DVT was caused by cramped seating conditions and by Air New Zealand's failure to warn of the risks of DVT. Her situation, however, is distinguishable from both Fulop and Husain. In Fulop, the court reasoned that the flight crew's decision not to divert the aircraft following the plaintiff's heart attack could constitute an "accident" if their actions failed to comply with the airline's operational standards.[5] Fulop, 175 F.Supp.2d at 664-66. In Husain, the airline was held liable for the passenger's death following an asthma attack after the flight attendant repeatedly refused to move the passenger from near a smoking section despite numerous requests.[6] Husain, 540 U.S. at ___-___, 124 S.Ct. at 1226-30.
 
 
 18
 Both Fulop and Husain involved a response by the flight crew to the passenger's medical condition. By contrast, in the instant case, there was no response by the flight crew that may or may not have violated industry standards. Rather, the only event was Rodriguez's development of the DVT. Consequently, there was no event external to the passenger, let alone an unusual or unexpected event. Under Saks, therefore, there was no accident for purposes of Article 17.
 
 
 19
 In the hearing before the district court on Air New Zealand's summary judgment motion, Rodriguez shifted the focus of her case to Air New Zealand's alleged failure to warn of the risk of DVT. Rodriguez, however, has submitted no evidence to raise a genuine issue of material fact as to whether there was either a clear industry standard or an airline policy at the time regarding DVT warnings.
 
 
 20
 Although Rodriguez submitted numerous exhibits, such as newspaper articles, scientific articles, and in-flight magazines, she submitted no information regarding whether there was either an industry practice or an Air New Zealand policy to warn of DVT at the time of her flight. The evidence she presented goes to what the airline industry allegedly knew or should have known about the connection between long flights and the risk of DVT and what steps the industry should have taken. However, none of the evidence she submitted addresses whether Air New Zealand failed to comply with its own policy or with industry practice at the time. In fact, the evidence submitted by both parties shows that Air New Zealand recommended, in the very magazine Rodriguez stated in her declaration that she read during her flight, that passengers should drink water, walk, and exercise during long flights — all actions that allegedly help prevent the development of DVT.
 
 
 21
 In Blansett v. Continental Airlines, Inc., 246 F.Supp.2d 596 (S.D.Tex.2002), the plaintiff presented evidence that, months before he suffered a stroke after developing DVT on an international flight, the International Air Transport Association, an industry association, had recommended warning passengers of the risk of DVT and ways to avoid it. The district court there denied the defendant airline's motion for partial summary judgment on the plaintiff's claim that the airline failed to warn of the risk of DVT, reasoning that a jury could find that the airline's failure to warn of the risk of DVT "was an unexpected and unreasonable deviation from routine industry procedure, and thus, an accident under the Warsaw Convention." Id. at 602.
 
 
 22
 On appeal, the Fifth Circuit reversed. Blansett v. Cont'l Airlines, Inc., 379 F.3d 177 (5th Cir.2004). The court assumed for purposes of the appeal that a failure to warn of DVT was a departure from an industry standard of care. Id. at 180-181. Nonetheless, the court concluded that the airline's failure to warn of DVT was not an unusual or unexpected event and thus not an accident for purposes of the Warsaw Convention because the warnings the airline did provide were in accord with the policies of the Federal Aviation Administration. Id.
 
 
 23
 Unlike the plaintiff in Blansett, Rodriguez has submitted no evidence that Air New Zealand failed to comply with any industry standard existing in September 2000, nor any other evidence establishing that Air New Zealand's conduct rose to the level of an unexpected or unusual event or happening external to Rodriguez. Cf. id. at 180-181 n. 5 (noting that the district court relied on the testimony of an expert witness that "failure to provide DVT warnings departed from industry custom" and that "five of the ten most-traveled international airlines provided information and instructions to passengers about DVT"). We thus need not decide whether an airline's failure to warn of DVT can constitute an accident for purposes of Article 17. We hold only that Rodriguez's development of the DVT was not an accident under the Warsaw Convention, and that Rodriguez has failed to raise a genuine issue of material fact regarding whether Air New Zealand departed from industry custom.
 
 
 24
 The judgment of the district court accordingly is
 
 
 25
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 DVT is a condition that occurs when a blood clot forms in a deep veinSee http: //www.nlm.nih.gov/medlineplus/ency/article/000156.htm.
 
 
 [2]
 Her speech returned and, because her complaint does not allege any permanent damage to her arm, presumably, that ability also returned
 
 
 [3]
 The district court did not address Rodriguez's allegation that Air New Zealand engaged in willful misconduct by failing to warn passengers of the risks of DVT. An airline's liability for willful misconduct is governed by Article 25 of the Warsaw Convention, which lifts the limitation on liability for an accident that is imposed by Article 22(1) of the ConventionSee Warsaw Convention, arts. 17, 22, 25.
 
 
 [4]
 Thrombophlebitis is the "inflammation of a vein with the formation of a thrombus," which is itself a "clot of blood formed within a blood vessel and remaining attached to its place of origin." Webster's New Collegiate Dictionary 1207 (1979)
 
 
 [5]
 After a bench trial on the issue, the court concluded that the air carrier did not violate its own policies or procedures or any industry standard and consequently entered judgment in favor of the air carrierFulop v. Malev Hungarian Airlines, 244 F.Supp.2d 217 (S.D.N.Y.2003).
 
 
 [6]
 The Court did not "dispositively determine whether the flight attendant's conduct qualified as `unusual or unexpected' underSaks," 540 U.S. at ___, 124 S.Ct. at 1227, because the airline did not raise the issue on appeal. Id. Thus, for purposes of the opinion the Court assumed that the flight attendant's conduct was an unexpected or unusual event external to the passenger and held the airline liable. Id.