Edward A. BLOTTEAUX,
Plaintiff—Appellant,

v.

QANTAS AIRWAYS LIMITED,
Defendant—Appellee,

and

United Airlines, Inc., Defendant.

No. 03–56837.
D.C. No. CV–03–000927 JFW.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 15, 2006.*

Decided March 1, 2006.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a)(2).

Clay Robbins, III, Esq., Magana Cathcart & McCarthy, Los Angeles, CA, for Plaintiff–Appellant.

Rod D. Margo, Esq., Condon & Forsyth, Los Angeles, CA, for Defendant–Appellee.

Before B. FLETCHER, CALLAHAN, Circuit Judges, and ENGLAND,** District Judge.

MEMORANDUM ***

Edward A. Blotteaux ("Blotteaux") appeals the district court's grant of sum-

** The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

mary judgment in favor of Qantas Airways Limited ("Qantas") on grounds that Blotteaux's development of Deep Vein Thrombosis ("DVT") fails to qualify as an accident compensable under the terms of Article 17 of the Warsaw Convention.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's judgment.

■■■ A grant of summary judgment is reviewed de novo. *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir.2005). Interpretation of the Warsaw Convention, a multilateral treaty governing the liability of air carriers engaged in international transportation, is a question of law also subject to de novo review. *Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 993 (9th Cir.2002), *cert. denied*, 537 U.S. 1227, 123 S.Ct. 1284, 154 L.Ed.2d 1089 (2003).

On or about September 26, 2001, Blotteaux developed DVT, a condition in which blood clotting forms in the deep veins of the legs, while seated in business class aboard an international flight operated by Qantas between Australia and the United States. It is undisputed that the flight in question was uneventful, with no equipment malfunction or other anomaly occurring. It is further undisputed that Blotteaux did not request any assistance or other accommodation from Qantas personnel during the course of the flight, and while he does claim to have noticed some leg discomfort as the trip progressed, Blotteaux did not seek any medical treatment for some thirteen days after concluding his air travel.

The susceptibility of airline passengers to development of DVT, particularly on long flights, is well recognized. It is un-

disputed that Qantas developed an informational video on the risks of DVT, and precautionary measures to be taken in the face of that risk, for use on long-haul flights. Qantas' standard custom and practice, since March 2001, has been to show its informational video on all international flights, including the flight at issue. In addition, it is undisputed that the Qantas in-flight magazine, which was available on Blotteaux's flight, contained an article cautioning passengers on the risk of developing DVT on long flights. Finally, Qantas' in-flight audio entertainment system included a segment about the importance of maintaining blood circulation during such flights.

Blotteaux makes two primary arguments in appealing the judgment below. First, he argues that the term "accident," which triggers liability for bodily injury under Article 17 of the Warsaw Convention, should be interpreted flexibly in order to allow recovery for his DVT-related damages. Secondly, Blotteaux contends that he was not provided with any meaningful warning as to the risk of DVT, and argues that Qantas' failure to adequately warn in that regard subjects the airline to liability under the Warsaw Convention. As set forth below, neither contention has merit.

■■■ Article 17 of the Warsaw Convention makes international air carriers liable for bodily injury sustained by a passenger "if the accident so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." 49 Stat. 3018. Liability under Article 17 therefore hinges in the present matter on whether or not Blotteaux's development of DVT constitutes an "accident", as that term has been defined.

---

1. Convention for the Unification of Certain Rules Relating to International Transporta-

tion by Air, Oct. 12, 1929, 49 Stat. 3000.

In *Air France v. Saks*, 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985), the Supreme Court addressed the definition of "accident" for purposes of assessing Article 17 liability. In *Saks*, an airline passenger became permanently deaf in one ear after experiencing severe pain and pressure in that ear during the plane's descent into Los Angeles enroute from Paris. *Id.* at 394, 105 S.Ct. 1338. The Court held that the hearing loss was not an "accident" for purposes of Article 17 liability because it resulted from "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." *Id.* at 406, 105 S.Ct. 1338. In order to trigger liability, the Court required that a passenger's injury be "caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405, 105 S.Ct. 1338.

The rationale of *Saks* applies squarely to this case. No evidence has been presented that anything unusual occurred aboard the Qantas flight in question, or that Blotteaux's development of DVT was triggered by anything other than his own internal reaction to the prolonged sitting/inactivity attendant to any lengthy flight. Blotteaux nonetheless argues that the reasoning of a subsequent Supreme Court decision, *Olympic Airways v. Husain*, 540 U.S. 644, 124 S.Ct. 1221, 157 L.Ed.2d 1146 (2004), should extend to the present matter.

In *Husain*, the airline was held liable for a passenger's fatal asthma attack after the flight attendant repeatedly refused to move the passenger out of the proximity of the plane's smoking section, despite numerous requests from the passenger's wife that an allergy to cigarette smoke made that move imperative. *See Id.* at 647, 124 S.Ct. 1221. The Court found that the attendant's refusal to assist the passenger was an unusual and unexpected event that

satisfied the "accident" requirement of Article 17. *Id.* at 646, 124 S.Ct. 1221.

The present case is factually distinguishable from *Husain* because it is undisputed that flight personnel were not asked to assist Blotteaux in any way and were not even notified of any discomfort on his part. Moreover, in *Rodriguez v. Ansett Australia Ltd.*, 383 F.3d 914 (9th Cir.2004), this court unequivocally found that the occurrence of DVT on an otherwise unremarkable flight does not constitute an accident because, pursuant to *Saks*, the condition was precipitated not by any unexpected or unusual event or happening but instead by the passenger's own internal reaction to normal aircraft operation. *Id.* at 917. *Rodriguez* distinguished *Husain* on grounds that it involved a response by flight crew to the passenger's medical condition, a distinction equally applicable here. *Id.* at 918. Consequently, with respect to an airline passenger's development of DVT under normal flight conditions, we have already decided that no "accident" under the Warsaw Convention could have occurred.

 Blotteaux's second argument is equally unavailing. He contends that Qantas failed to meaningfully inform its passengers about the risk of developing DVT on long-haul flights, and argues that such a failure can be analogized to the "accident" identified by the Supreme Court in *Husain*. As *Rodriguez* makes clear, however, *Husain* involved a response by the flight crew to the passenger's medical condition, a circumstance not present in this case. *Id.* The only question left open by *Rodriguez*, given our statement there that we need not decide the issue, is whether an airline's failure to warn of DVT can constitute an accident for purposes of Article 17. *See Id.* at 919.

There is no factual basis here for Blotteaux's claim that Qantas failed to ade-

quately warn him about the danger of DVT. Since both video, audio, and written materials concerning DVT were provided, the fact that Blotteaux failed to heed those materials does not support any failure to warn on Qantas' part. In the face of those warnings, Blotteaux's claim that Qantas somehow "hid" the risk of developing DVT is simply untenable. Moreover, Blotteaux has failed to demonstrate any clear industry standard against which Qantas' warnings could be measured in any event. In the absence of a viable failure-to-warn claim, this case is squarely controlled by *Saks* and *Rodriguez*.

AFFIRMED.