**Michel PARADIS, Plaintiff,**

v.

**GHANA AIRWAYS LIMITED
Defendant.**

**No. 04 CIV. 6971SHS.**

United States District Court,
S.D. New York.

Nov. 22, 2004.

Michel Paradis, Oxford, UK, pro se.

Patrick James Bonner, Freehill, Hogan & Mahar, LLP, New York, NY, for Defendant.

### OPINION & ORDER

STEIN, District Judge.

Michel Paradis, acting *pro se*, brings this New York common law breach of contract action to recover losses that he and his traveling companions suffered when returning to New York from Sierra Leone. Specifically, he seeks compensation from Ghana Airways Limited for damages stemming from its cancellation of his flight. The airline has moved to dismiss the complaint, contending that the Montreal Convention preempts this cause of action and that Paradis lacks standing to pursue damages on behalf of his companions. The motion to dismiss the complaint is granted because the Montreal Convention and its predecessor, the Warsaw Convention, both preempt state law claims based on delay in air transportation.

FACTUAL BACKGROUND

The facts as alleged in the complaint are as follows: Paradis coordinated a trip to Sierra Leone for his law school student organization, Universal Jurisdiction, which provides volunteer legal services in developing countries. (Am.Compl.¶¶ 8, 9). On April 29, 2004, Paradis purchased round-trip tickets for himself and four other members of Universal Jurisdiction to travel on Ghana Airways between New York City and Freetown, Sierra Leone, departing from New York on May 29, 2004 and returning from Sierra Leone three weeks later, on June 18, 2004. (Am.Compl.¶ 11). The group's itinerary between New York and Freetown included a connection in Accra, Ghana during both the departing and the returning trips. (Am.Compl.¶¶ 11–12).

When in Sierra Leone, Paradis and his companions confirmed their return flight two days before their scheduled departure. (Am.Compl.¶ 18). They went to the airport on Friday, June 18, arriving at around 12:00 p.m. for their 3:00 p.m. flight to Accra. (Am.Compl.¶¶ 12, 19). At approximately 4:15 p.m.—an hour and fifteen minutes after the scheduled departure time—an announcement was made that the flight had been cancelled. (Am.Compl.¶¶ 12, 25). Ghana Airways had no ticket desks at the airport, but its staff informed Paradis there were no other flights leaving that day and that he should make arrangements with the Ghana Airways office in Freetown the next business day. (Am. Compl.¶¶ 20, 27).

The group left the airport and arrived back in Freetown at around 5:00 p.m. (Am. Compl.¶ 28). Because members of the group were anxious to return to the United States for various prior commitments, including summer employment, a bar examination review course and mandatory meetings for organizations (Am. Compl.¶¶ 48–51), Paradis made a reservation with another air carrier, Astreaus Airways, for seats on a flight that would leave Sierra Leone at 10:30 that same night, Friday June 18, and fly to Gatwick Airport in England. (Am.Compl.¶ 31). Paradis searched the internet for flights from Gatwick to New York and learned that the group would most likely be able to acquire tickets for that leg upon arrival at Gatwick. (Am.Compl.¶¶ 31–32, 56–57).

Paradis then called the Ghana Airways office in New York and inquired about later Ghana Airways flights out of Sierra Leone. (Am.Compl.¶ 30). The agent in New York claimed to be unaware of the cancellation of Paradis' flight. (Am.Compl.¶ 30). Paradis "was given no assurances of subsequent flight availability and was told to take up the matter with the GHANA AIRWAYS office in Freetown, Sierra Leone, which at [that] hour on a Friday was closed." (Am. Compl. at ¶ 30). Paradis' conversation with the agent then shifted to how much Ghana Airways would pay to compensate the group for the cost of securing transportation on other carriers. (Am.Compl.¶ 32). The agent allegedly refused to offer anything more than $559 per ticket, one-half the original ticket price and substantially less than the approximately $1,500 per person total that Paradis projected it would cost to purchase tickets for the Astreaus Airways flight to Gatwick and another flight from Gatwick to New York. (Am.Compl.¶¶ 32, 34). In the context of that discussion about reimbursement for alternative flight arrangements, the agent allegedly told Paradis that "finding a way back to New York was 'your problem.'" (Am.Compl.¶ 42).

Paradis and his companions feared being stranded if they spent their remaining cash on accommodations while waiting for Ghana Airways' next flight, scheduled for the following Friday, to leave, especially because they did not have guaranteed seats. (Am.Compl.¶ 47). Consequently, they purchased the tickets Paradis had reserved on Astreaus Airways and left Sierra Leone later that same night, June 18. (Am.Compl.¶¶ 53, 55). Upon his return to the United States, Paradis exerted extensive, albeit unsuccessful, efforts to negotiate a satisfactory settlement with Ghana Airways for the out-of-pocket losses the group suffered as a result of the cancelled flight. (Am.Compl.¶¶ 59–98).

Within six weeks of his arrival back in the New York, Paradis brought suit in New York Supreme Court against Ghana Airways for breach of contract pursuant to New York law and for damages occasioned by delay pursuant to the Warsaw Convention. (*See generally* Notice of Removal of Def. Ghana Airways Ltd. Ex. A). Ghana Airways promptly removed the action to the United States District Court for the Southern District of New York on the grounds that the airline is an instrumentality of a foreign state. *See* 28 U.S.C. §§ 1441, 1603(a); (Notice of Removal of Def. Ghana Airways Ltd.).[1] Paradis then filed an Amended Complaint that omitted his Warsaw Convention claim and asserted only a state law breach of contract claim. (*See generally* Am. Compl.). Ghana Airways has moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Paradis' state law claim is preempted by a treaty to which the United States is a party and that Paradis lacks standing to recover for losses suffered by his traveling companions.

---

1. Ghana Airways also asserted that the action was removable on the basis of federal question jurisdiction, since a treaty of the United States was involved. *See* 28 U.S.C. § 1331; (Notice of Removal of Def. Ghana Airways Ltd.). However, as noted, subsequent to removal, Paradis amended his complaint to assert only a state law breach of contract claim. The Court saves for another day the question of whether the preemptive effect of the Con-

vention would be an adequate basis for exercising federal question jurisdiction over a state law claim. *Cf. Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 304 (2d Cir.2004) (commenting that in circumstances of "complete preemption," stale common law complaints can pose a federal question in accordance with the well-pleaded complaint rule).

DISCUSSION

*Motion to Dismiss*

In considering a motion to dismiss a complaint pursuant to Fed.R.Civ.P. 12(b), a court must assume that the allegations set for the complaint are true, and the motion may be granted " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 234 (2d Cir.1999) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). A court may rely only on the factual allegations set forth in the complaint itself and not on additional matters asserted in affidavits, exhibits, or other papers submitted in conjunction with the motion. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir.2000).

■ The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Fed.R.Civ.P. 8(a)(2)). The pleadings drafted by *pro se* litigants are held to even "less stringent standards than formal pleadings drafted by lawyers..." and a court " 'must construe the complaint liberally' and 'interpret [it] to raise the strongest arguments that [it] suggest[s].' " *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *see also*

*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)).[2]

*Defendant's Arguments: Preemption and Standing*

Ghana Airways seeks dismissal of the complaint on two grounds, namely that Paradis' state law claim is preempted by the treaty popularly known as the Montreal Convention[3] and that he lacks standing to pursue relief for damages incurred by his traveling companions.

*The Conventions*

In November of 2003, before any of the events involved in this litigation, the Montreal Convention entered into force in the United States, superceding a prior air carriage treaty commonly known as the Warsaw Convention.[4] *See Ehrlich v. American Airlines*, 360 F.3d 366, 371 & n. 4 (2d Cir.2004). The parties disagree about which treaty applies to this action. The airline urges that the Montreal Convention governs, whereas Paradis contends that the Warsaw Convention serves as the applicable law, because the contract between the parties so provided. (*See* Am. Compl. Ex. B).

The key provision of whichever Convention applies is its statement of preemptive effect. Article 24(1) of the Warsaw Convention states that "[i]n the carriage of passengers and baggage, any action for

---

2. Paradis may not merit such forgiving treatment given the fact that he recently passed the New York bar examination. *See New York State Bar Results*, N.Y.L.J., Nov. 18, 2004, at 13; *Padilla v. Payco Gen. American Credits, Inc.*, 161 F.Supp.2d 264, 271 (S.D.N.Y.2001). Nonetheless, even if the Court accords Paradis the level of deference given to ordinary *pro se* plaintiffs, because his claim is preempted, his complaint fails to state a cause of action upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

3. The Montreal Convention is formally known as the Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal on 28 May 1999, *reprinted in* S. Treaty Doc. No 106–45, 1999 WL 33292734 (2000).

4. The Warsaw Convention is formally known as the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. No. 876 (1934), *reprinted in* note following 49 U.S.C. § 40105.

damages, however founded, can only be brought subject to the conditions and limits set out in this convention." That version of Article 24(1) derived from an amendment to the Warsaw Convention generally referred to as the Montreal Protocol.[5] The Montreal Convention, which later replaced the Warsaw Convention entirely, offers in its Article 29 similar language to that of the Montreal Protocol: "In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . ."

Defendant posits that the Montreal Convention should apply because it was already in effect at the time of the events at issue. *See Ehrlich,* 360 F.3d at 371. Plaintiff contends that the Warsaw Convention is the applicable treaty, because the contract on the ticket invoked the Warsaw Convention rather than the Montreal Convention. Nevertheless, the Court need not determine which convention applies, because they have substantially the same preemptive effect; Article 29 of the Montreal Convention simply clarified the language of the Montreal Protocol's amendment to Article 24(1) of the Warsaw Convention. *See* Article–by–Article Analysis of the Convention for the Unification of Certain Rules for International Carriage by Air Done at Montreal May 28, 1999, S. Treaty Doc. No 106–45, 1999 WL 33292734 (2000) (describing Article 29 of

the Montreal Convention as having been "taken from" Montreal Protocol No. 4). Here, the preemptive effect is identical regardless of whether the Montreal Convention or the Warsaw Convention (together, "the Conventions") applies; thus, the Court need not decide which Convention controls.

*Non–Performance*

■ The Conventions preempt all state law claims within their scope. *See Shah v. Pan Am. World Servs., Inc.,* 148 F.3d 84, 97–98 (2d Cir.1998); *Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138, 141 (2d Cir. 1998); *see also El Al Israel Airlines v. Tseng,* 525 U.S. 155, 176 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (holding that the Warsaw Convention preempts a state law claim against an airline for injury even though the circumstances did not satisfy the Convention's conditions for imposing liability). Paradis brings a state law claim for relief, drawing a distinction between cases of mere delay in travel that the Conventions cover—*see* Warsaw Convention Article 19 ("The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage or goods"); Montreal Convention Article 19 ("The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo.")—and cases of contract non-performance to which state law applies.

■ He contends that the Conventions regulate the terms of carriage by air, but that this case is not covered by the Conventions because it involves the failure to

---

**5.** The Montreal Protocol is formally known as Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929 as amended by the Protocol Done at the Hague on September 8, 1955, *reprinted in* S. Exec. Rep. No. 105–20 pp. 21–32 (1998).

Before the Montreal Protocol amended Article 24(1) of the Warsaw Convention, it read, "In the cases covered by articles 18 and 19 [, which includes claims for delay,] any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." *King v. American Airlines,* 284 F.3d 352, 357 (2d Cir.2002) (quoting 49 U.S.C.A. § 40105 note).

so carry. Nevertheless, the facts, as alleged, fail to state a claim for relief that escapes the preemptive effect of the Conventions. Paradis reacted to a delay by immediately procuring substitute transportation and demanding reimbursement from the airline. A passenger cannot convert a mere delay into contractual non-performance by choosing to obtain more punctual conveyance. *See Fields*, 2000 WL 1091129, *4, 2000 U.S. Dist. LEXIS 9397, at * 13 ("Plaintiff's attempt to make the claim sound in breach of contract terms does not change the fact that the claim, however founded, arose out of a delay in transportation.") (quoting *Sassouni v. Olympic Airways*, 769 F.Supp. 537, 540–41 (S.D.N.Y.1991)). Although the group allegedly "feared being stranded" (Am. Compl. at ¶ 47) and had various presumably bona fide reasons for needing to return to the United States instanter, Ghana Airways had not failed to perform its contract obligations at the time the group left Sierra Leone.

 The contract on the ticket did not require Ghana Airways to provide prompt transportation. Rather, the contract read, in pertinent part, as follows:

Carrier undertakes to use its best efforts to carry the passenger and baggage with reasonable dispatch. Times shown in timetables or elsewhere are not guaranteed and form no part of this contract. Carrier may without notice substitute alternate carriers or aircraft,

and may alter or omit stopping places shown on the ticket in case of necessity. Schedules are subject to change without notice. Carrier assumes no responsibility for making connections.

(Am.Compl.Ex. B). After cancellation of the Ghana Airways flight, Paradis decided to book a flight with a different carrier that would leave within several hours. Ghana Airways did not have the opportunity to fulfill its contractual obligation; failure to provide a substitute airplane within several hours of cancellation is not a failure to exercise "best efforts to carry the passenger ... with reasonable dispatch." [6]

*Repudiation*

 Plaintiff contends that in addition to failing to perform its obligations pursuant to the contract, the carrier "repudiated any future performance" when its agent referred to Paradis' travel complications as "your problem." [7] (Mem. of Law in Opp. to Def.'s Mot. to Dismiss, Dated Oct. 15, 2004 at 1). Pursuant to the common law of New York, a party may repudiate certain types of contracts prior to the time of performance, thereby entitling the non-repudiating party to damages for total breach. *See Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 462, 705 N.E.2d 656, 682 N.Y.S.2d 664 (1998); *Long Is. R.R. Co. v. Northville Indus. Corp.*, 41 N.Y.2d 455, 463, 393 N.Y.S.2d 925, 362 N.E.2d 558

---

**6.** That is particularly true in Sierra Leone, a severely impoverished nation that has only one airport with a paved runway and that has just recently emerged from an eleven-year civil war, *see* CIA World Factbook 2004, Sierra Leone, *available at* http://www.cia.gov/cia/publications/factbook/geos/sl.html (Nov. 15, 2004), but the Court's reasoning does not depend on the challenging conditions in that nation.

**7.** The Court need not credit plaintiff's legal conclusion that the conduct was a repudiation. It must simply assume the facts, as alleged, to be true for the purposes of a motion to dismiss. *See, e.g., Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 234 (2d Cir.1999). The facts set forth in the complaint indicate that the agent's statement was not, in fact, a repudiation, but simply a refusal to reimburse Paradis for the full cost of procuring replacement tickets. (*See* Am. Compl. ¶¶ 32–46).

(1977). "A repudiation can be either 'a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach' or 'a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.'" *Norcon Power,* 92 N.Y.2d at 462, 682 N.Y.S.2d 664, 705 N.E.2d 656 (quoting Restatement (Second) of Contracts § 250). Repudiation occurs "when a breaching party's words or deeds are unequivocal." *Id.; see also Palazzetti Import/Export, Inc. v. Morson,* No. 98 Civ. 722, 2001 WL 1568317, at *9 (S.D.N.Y. Dec.6, 2001) ("The renunciation...must rise to the level of a clear and unqualified refusal to perform the entire contract.").

◼ The Ghana Airways agent made the "your problem" comment in response to Paradis' request for a form of relief that the airline was not required to provide. (*See* Am. Compl. ¶¶ 32–46). The contract made no provision for reimbursement of the cost of more punctual, alternative transportation in the event of a flight cancellation. The complaint puts the "your problem" comment in context and makes clear that there was never any repudiation of Ghana Airways' obligations pursuant to the contract.

*Preemption of Plaintiff's Claim*

◼ A plaintiff cannot "circumvent [the Warsaw Convention] merely by recharacterizing her claims as sounding in state law." *Fields v. BWIA Int'l Airways,* No. 99 Civ. 2493, 2000 WL 1091129, *4, 2000 U.S. Dist. LEXIS 9397, at * 13 (E.D.N.Y. July 7, 2000). Any other rule would undermine the U.S. Supreme Court's instruction that "[t]he cardinal purpose of the Warsaw Convention...is to 'achiev[e] uniformity of rules governing claims arising from international air transportation.'" *El Al Israel Airlines v. Tseng,* 525 U.S. 155, 169 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (citation omitted).

◼ Paradis argues that his state law claim withstands the preemptive effect of the Conventions because he sues for nonperformance of contract rather than for delay. To support that position, he relies principally on *Wolgel v. Mexicana Airlines,* 821 F.2d 442 (7th Cir.1987), an action brought by a husband and wife because they had been "bumped" [8] from a Mexicana Airlines flight. Although the Warsaw Convention provided the sole remedy for "delay," the United States Court of Appeals for the Seventh Circuit construed the word "delay," as used in the Convention, to exclude situations when passengers "never leave the airport." *Id.* at 444–45. *Wolgel's* distinction between "bumping" and "delay" has been undercut by the U.S. Supreme Court's message in *Tseng* "that the application of the Convention is not to be accomplished by a miserly parsing of its language." *King v. American Airlines,* 146 F.Supp.2d 159, 162 (N.D.N.Y.2001).

The circumstances of *Wolgel* are readily distinguishable from those that Paradis faced in Sierra Leone. The Wolgels were deprived of all benefit of their bargain. The airline denied them boarding on the initial leg of their round-trip itinerary and had provided no compensation even five years later when the plaintiffs brought suit. *See Wolgel,* 821 F.2d at 443. Paradis, who flew the initial leg of his round-trip itinerary, has offered no factual allegations that Ghana Airways failed to offer substi-

---

8. Many of the cases involving an inability to fly as scheduled involve "bumping," an airline industry practice whereby passengers are denied seats as a result of intentional overselling meant to minimize the number of empty seats on planes. *See Nader v. Allegheny,* 426 U.S. 290, 292, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976).

tute transportation. Indeed, the staff at the airport and the agent in New York both instructed him to make arrangements with the Ghana Airways office in Freetown the following business day. Paradis and his companions were so keen to leave Sierra Leone that they did not give the airline a reasonable opportunity to perform.

Other courts have refused to allow recovery for breach of contract when plaintiffs responded to delays as Paradis did, by booking alternative flights. *See, e.g., Minhas v. Biman Bangladesh Airlines,* No 97 Civ. 4920, 1999 WL 447445 (S.D.N.Y. June 30, 1999); *Ratnaswamy v. Air Afrique,* No. 95 C 7670, 1998 WL 111652 (N.D.Ill. March 3, 1998); *Alam v. Pakistan Int'l Airlines Corp.,* 92 Civ. 4356, 1995 WL 17201349, 1995 U.S. Dist. LEXIS 11919 (S.D.N.Y. July 27, 1995); *Malik v. Butta,* 92 Civ. 8703, 1993 WL 410168, 1993 U.S. Dist. LEXIS 1442 (S.D.N.Y. Oct. 14, 1993).

In *Ratnaswamy v. Air Afrique,* No. 95 C 7670, 1998 WL 111652, at *2–3 (N.D.Ill. March 3, 1998), for example, a husband and wife sued, *inter alia,* for breach of contract when, despite having reconfirmed their tickets, they were denied boarding on a return flight from Senegal to New York City. *Id.* at *1–2. The defendant airline, Air Afrique, refused to compensate plaintiffs by providing them tickets for a flight on another carrier. *Id.* at *2. The airline instructed the plaintiffs to wait three days for the next Air Afrique flight, seats on which were not guaranteed; instead of complying, the plaintiffs bought more expensive tickets to return on an earlier flight operated by a different airline. *Id.* at *2. The *Ratnaswamy* court held that because the plaintiffs had already flown six out of seven Air Afrique segments of their planned itinerary, the suit was actually "for damages they allegedly sustained as a result of their delay in leaving Africa." *Id.* at *4. Distinguishing its own Circuit's opin-

ion in *Wolgel,* the *Ratnaswamy* court held that the plaintiffs' state law claims were "within the purview of the convention," which provided the "exclusive remedy" for delay, and were accordingly preempted. *Id.* (citation omitted).

Similarly, in *Minhas v. Biman Bangladesh Airlines,* No. 97 Civ. 4920, 1999 WL 447445, at *1 (S.D.N.Y. June 30, 1999), Judge Barbara S. Jones rejected the state law claims of Minhas, who had been bumped off of a return flight from New Delhi to New York in March of 1997. The plaintiff remained in India for 45 extra days after that, trying unsuccessfully to get a return flight from the defendant airline. *Id.* Eventually, when Minhas was informed in late April that no flight would be available to New York until some time in July, her spouse bought her a ticket on another airline. *Id.* As a result of the delay and her concomitant inability to access study materials, Minhas claimed that she was unable to sit for the California bar examination in July as she had planned. *Id.* Although Minhas did not specify whether she brought her claims in contract or tort, Judge Jones held broadly that "[c]laims arising from so-called 'bumping' are within the scope of Article 19 of the Convention," and granted the airline's motion for partial summary judgment. *Id.* at *2.

Just as the plaintiffs in *Minhas* and *Ratnaswamy,* Paradis did not afford the airline an opportunity to perform its remaining obligations pursuant to the contract. The several extra hours Paradis spent in Sierra Leone did not expose Ghana Airways to liability for contractual nonperformance. Moreover, there was no indication that Ghana Airways intended to repudiate its contractual obligations. The Conventions apply and therefore preempt Paradis' state law breach of contract claim.

*Standing*

The Court need not address defendant's contention that Paradis does not have standing to bring this action on behalf of his traveling companions, because plaintiff's breach of contract claim is preempted by the relevant air carriage treaty.

CONCLUSION

The motion of Ghana Airways to dismiss the Complaint is granted without prejudice.

SO ORDERED.