Jacob BUNIS, Plaintiff,

v.

ISRAIR GSA, INC. and Israir Airlines & Tourism, Ltd., Defendants.

No. 1:06–cv–06437–ENV–JMA.

United States District Court, E.D. New York.

July 30, 2007.

Victor A. Carr, Stock & Carr, Esqs., Mineola, NY, for Plaintiff.

Michael J. Holland, Condon & Forsyth, LLP, New York, NY, for Defendants.

## MEMORANDUM and ORDER

VITALIANO, District Judge.

Defendants Israir GSA, Inc. and Israir Airlines & Tourism, Ltd.[1] removed this action from Supreme Court of the State of New York, County of Kings. Plaintiff Jacob Bunis now moves to remand. The plaintiff's motion is denied.

## BACKGROUND

The facts recounted by the Court on this motion are taken from the complaint, and do not represent findings of fact by the Court.

Plaintiff alleges that he had a significant, visible disability or handicap, that the disability was known to defendants, and that defendants failed to provide him with proper care and attention for his disability. As a result, plaintiff pleads, he sustained injury as he disembarked from defendants' aircraft on August 15, 2006 at John F. Kennedy International Airport (JFK). In an affidavit submitted in support of his motion to remand, plaintiff clarifies that he suffers from a serious heart condition, which limits his mobility and that he arrived at JFK on August 15, 2006 at approximately 10:00 p.m. on an international flight operated by defendants. Upon exiting the plane, he requested a wheelchair of defendants' employee. After waiting more than 20 minutes and after the lights in the terminal began to be turned off, plaintiff started walking toward the baggage claim area. At some point, while still in the international arrivals area, but no longer at the gate, plaintiff experienced the onset of chest pains. Plaintiff ultimately arrived at the baggage claim area at approximate-

1. Israir GSA, Inc. is an agent of Israir Airlines & Tourism, Ltd., which is a foreign air carri-    er.

ly 11:30 p.m., where medical personnel and the police were called. Plaintiff was taken to the hospital by ambulance.

On October 20, 2006, plaintiff filed his complaint in the Supreme Court of the State of New York, alleging two causes of action both sounding in negligence. Defendants removed to this Court on December 5, 2006 and answered one day later. Plaintiff filed the instant motion to remand on March 5, 2007.

## DISCUSSION

■ Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to the district court "for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). If an action is "founded on a claim or right arising under the Constitution, treaties, or laws of the United States", it is "removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). Removal statutes are to be strictly construed, however, and any doubts resolved in favor of remand. *See Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 382–83 (S.D.N.Y.2006); *Codapro Corp. v. Wilson*, 997 F.Supp. 322, 324–25 (E.D.N.Y.1998). The burden of showing the proper exercise of jurisdiction by this Court rests with the party seeking removal. *See California Public Employees' Re-*

*tirement System v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir.2004); *Grimo v. Blue Cross/Blue Shield of Vermont*, 34 F.3d 148, 151 (2d Cir.1994).

■ Defendants predicated their removal on federal question jurisdiction, 28 U.S.C. § 1331, arguing that the Court has original jurisdiction over this action under the Warsaw Convention.[2] Plaintiff, in turn, bases his motion to remand on the argument that he was not, within the meaning of the Warsaw Convention, in the process of disembarking from the international flight when he was injured and, therefore, that the Convention does not apply. Since federal jurisdiction cannot otherwise be established, so plaintiff argues, this matter should be remanded to state court.

■ The Warsaw Convention was generally intended to make uniform the procedure for dealing with claims arising out of international transportation and "to limit air carrier's potential liability in the event of accidents." *In re Disaster at Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1270 (2d Cir.1991). "Over time, the Warsaw Convention fostered a system of liability consisting of a series of laws, treaties, and individual contracts that governs the international transportation of persons, baggage, and goods by air." *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 370 (2d Cir.2004).[3] Article 17 of the Conven-

---

2. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876, *reprinted in* 49 U.S.C. § 40105 note. The Court observes that as "the court at the place of destination", it has so-called treaty jurisdiction over this dispute by the terms of the Convention. *Id.*, art. 28(1), 49 U.S.C. § 40105. In and of itself, this does not resolve the question of federal subject matter jurisdiction, however. *See Benjamins v. British European Airways*, 572 F.2d 913, 915–16 (2d Cir.1978).

3. The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000) (Montreal Convention) was drafted to replace the Warsaw Convention. *See Ehrlich*, 360 F.3d at 371 n. 4.

Although a State Party to the Warsaw Convention, Israel is not a State Party to the Montreal Convention. *See* U.S. Department of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2006, available at http://www.state.gov/documents/

tion establishes when a carrier may be held liable for injuries to its passengers and is the sole remedy for any passengers whose injuries fall within its scope. *Id.* It reads in English translation as follows:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat. at 3018. Both parties argue that the key to resolution of the instant motion is determining whether plaintiff was in the course of disembarking when he sustained his claimed injury, and both point the Court to the test established in *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir.1975).

In *Day*, the Second Circuit looked to "the passengers' activity (which was a condition to embarkation), to the restriction of their movements, to the imminence of boarding, or even to their position adjacent to the terminal gate" to determine whether the passengers were in the course of embarking when they sustained their injuries.[4] *See also Buonocore v. Trans World Airlines, Inc.*, 900 F.2d 8, 10 (2d Cir.1990)

("the *Day* analysis is still the correct one"); *Rolnick v. El Al Israel Airlines, Ltd.*, 551 F.Supp. 261, 263 (E.D.N.Y.1982) ("The 'risks inherent in aviation' include injuries that occur while a passenger is embarking and disembarking, and the Convention imposes liability for such injuries. The task of fixing the point at which embarking begins and disembarking concludes, however, devolves upon the courts."). In so doing, both parties assume that the place where plaintiff ultimately sought help, i.e., the baggage claim area, is where the "accident" occurred for the purposes of Article 17 analysis and expend considerable energy discussing who controlled and who had access to that area, who directed and/or restricted plaintiff's movements as he proceeded toward the baggage claim, and even the baggage claim's distance from the gate.

What the parties do not address—and what the Court deems critical—is *where* the alleged accident, i.e. the injury—causing event, occurred. The location where plaintiff sought medical treatment for his injuries does not necessarily answer this question. In *Air France v. Saks*, 470 U.S. 392, 399, 105 S.Ct. 1338, 1342, 84 L.Ed.2d 289 (1985), the Supreme Court noted that the Warsaw Convention itself contains no definition of "accident" and held "that lia-

---

organization/65515.pdf (last visited July 16, 2007). Thus, whether the Montreal Convention governs the instant matter turns on whether plaintiff had a one-way or a round-trip ticket from the United States to Israel. Article 1(2) of the Montreal Convention provides as follows: "For the purposes of this Convention, the expression international carriage means any carriage in which, according to the agreement between the parties, the place of departure and the place of destination ... or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." The issue need not be decided now, however, as Article 17 of the Montreal Convention is taken

verbatim from Article 17 of the Warsaw Convention, and courts interpreting the Montreal Convention rely on cases interpreting similar or identical provisions of the Warsaw Convention. *See Booker v. BWIA West Indies Airways, Ltd.*, 2007 WL 1351927, *5 (E.D.N.Y. 2007); *Baah v. Virgin Atlantic Airways Ltd.*, 2007 WL 424993, *4 (S.D.N.Y.2007); *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 110–11 (S.D.N.Y.2004), *aff'd* 194 Fed.Appx. 5 (2d Cir.2006).

4. Although *Day* dealt with embarkation, courts have equally applied its test to disembarkation. *See Alleyn v. Port Authority of New York*, 58 F.Supp.2d 15, 20 n. 10 (E.D.N.Y. 1999).

bility under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." Lower courts were directed to apply this definition flexibly "after assessment of all the circumstances surrounding a passenger's injuries." *Id.* Interpreting *Saks* some years later, the Supreme Court held that "the 'accident' condition precedent to air carrier liability under Article 17 is satisfied when the carrier's unusual and unexpected refusal to assist a passenger is a link in a chain of causation resulting in a passenger's pre-existing medical condition being aggravated. . . ." *Olympic Airways v. Husain,* 540 U.S. 644, 646, 124 S.Ct. 1221, 1224, 157 L.Ed.2d 1146 (2004). In *Olympic Airways,* the decedent, who was allergic to cigarette smoke, repeatedly asked to be moved away from the smoking section on an international flight. The flight attendant refused to move the decedent, and, after suffering a reaction to the ambient cigarette smoke, he passed away. The Supreme Court held that such inaction could constitute an accident within the meaning of Article 17: "The relevant 'accident' inquiry under *Saks* is whether there is 'an unexpected or unusual *event or happening.*'" *Id.* at 654–55, 124 S.Ct. at 1228–29, 157 L.Ed.2d 1146 (internal citations omitted). Here, as in *Olympic Airways,* "[t]he rejection of an explicit request for assistance would be an 'event' or 'happening'. . . ." *Id.*

■ Clearly, the language of the Convention does not require that the alleged injury manifest while aboard the aircraft, in the course of embarking or disembarking, or by any specified time thereafter. "Instead, a passenger's delayed reaction to an Article 17 accident resulting in injury or death is actionable so long as the accident itself took place 'on board the aircraft or in the course of any of the operations of embarking or disembarking.'" *Prescod v.*

*American Airlines,* 383 F.3d 861, 869 (9th Cir.2004), *quoted with approval in Singh v. North American Airlines,* 426 F.Supp.2d 38, 47 (E.D.N.Y.2006) (holding that injury—causing event—the accident for the purposes of Warsaw Convention analysis—of mislabeling of luggage took place as part of embarking and brought claim within scope of Convention). *See also Pflug v. Egyptair,* 961 F.2d 26, 30 (2d Cir.1992).

Once the place of the alleged injury-causing event is identified, the application of the *Day* test is simple: specifically here, plaintiff alleges that, after exiting the plane, he requested a wheelchair at the arrival gate, and that the gate attendant/employee left to procure one but never returned. Plaintiff waited more than 20 minutes at the arrival gate, but to no avail. The failure to act—the failure to provide the wheelchair—is the alleged injury-causing event or "accident" within the meaning of the Warsaw Convention. Applying the *Day* factors, it is clear that plaintiff was not just in close proximity to the gate but was at the gate having just deplaned (location prong) awaiting the return of and further direction from defendants' employee (activity and control prongs). Thus, plaintiff was disembarking within the meaning of the Warsaw Convention from an international flight when the accident that plaintiff alleges caused his injuries occurred. Defendants, definitively, have met their burden of showing federal question jurisdiction and, therefore, that this matter was properly removed.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is denied.

SO ORDERED.