# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10384

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2015

Lyle W. Cayce
Clerk

TINH THI NGUYEN,

> Plaintiff - Appellant

v.

KOREAN AIR LINES COMPANY, LIMITED; DALLAS-FORT WORTH INTERNATIONAL AIRPORT BOARD,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, KING, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:

Korean Air Lines passenger Tinh Thi Nguyen flew from Vietnam to Korea, and from Korea to Dallas, Texas. After deplaning and walking through the terminal towards baggage claim, Nguyen lost her footing and fell down an escalator. She was seriously injured. Nguyen sued Korean Air, claiming that the airline's failure to place her in the wheelchair that she requested when she booked her flight was an "accident" under Article 17 of the Warsaw Convention. The district court granted summary judgment for Korean Air, holding that Nguyen's failure to be placed in a wheelchair was not an

No. 15-10384

"unexpected or unusual event" and therefore not an "accident" under Article 17. Nguyen appeals.

## BACKGROUND

Plaintiff Tinh Thi Nguyen flew—by herself, 76 years old at the time—from Ho Chi Minh City to Seoul and then on to Dallas on aircraft operated by Korean Air. Nguyen speaks and understands only Vietnamese. Prior to her trip, Nguyen arranged for the airline to provide wheelchair service once she arrived in Dallas. Korean Air classified Nguyen as a wheelchair passenger on her flight itinerary and on the flight manifest. Nguyen's flight from Ho Chi Minh City to Seoul was uneventful. During Nguyen's flight from Seoul to Dallas, she attempted to speak with a flight attendant about the wheelchair she had reserved. The flight attendant did not speak Vietnamese and was unable to communicate with Nguyen. There was no further communication between Nguyen and any Korean Air personnel regarding a wheelchair.

Per Korean Air's policy, approximately 40 minutes before landing on flights from Korea to the United States, the flight crew is to announce Korean Air's wheelchair policy, confirm wheelchair requests, and advise wheelchair passengers to deplane last. This announcement was made on Nguyen's flight in Korean, because the aircraft departed from Korea, and in English, because it landed in the United States. No one instructed Nguyen in Vietnamese. Nguyen deplaned with her row—she did not wait with the wheelchair passengers. After deplaning, Nguyen walked past a row of waiting wheelchairs and wheelchair attendants. She did not ask for a wheelchair; she did not point at a wheelchair; she did not sit in a wheelchair; she did not indicate a need for a Vietnamese-speaker. Korean Air employees did not track Nguyen down and provide her a wheelchair. On foot, Nguyen followed the other passengers onto an escalator towards baggage claim; unable to maintain her footing, she fell, suffering multiple injuries.

2

No. 15-10384

Nguyen sued Korean Air.[1]   Her claim is governed by the Warsaw Convention,[2] which sets forth air carrier liability for a passenger's injuries if the accident causing the injury took place on board the aircraft, or during the process of embarking or disembarking.   On cross motions for summary judgment, the district court ruled for the airline, dismissing all of Nguyen's claims.

**STANDARD OF REVIEW**

We review de novo a district court's judgment on cross-motions for summary judgment. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 180 (5th Cir. 2009).  Summary judgment is proper when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  We construe all facts and draw all justifiable inferences in the light most favorable to the nonmoving party, but "the nonmoving party must set forth specific facts to establish that there is a genuine issue for trial." *First Colony Life Ins. Co.*, 555 F.3d at 180.

**DISCUSSION**

This is a case about the meaning of the word "accident" under the Warsaw Convention, which imposes liability on air carriers for harm to their passengers when "the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Blansett v. Cont'l Airlines, Inc.*, 379 F.3d 177, 179 (5th Cir. 2004) (quoting the Warsaw Convention).  Nguyen challenges the

---

[1] Nguyen also sued the Dallas-Fort Worth International Airport Board.  The district court granted the Airport Board's motion to dismiss for lack of jurisdiction because Nguyen failed to give proper notice, a decision that she does not appeal.

[2] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) [hereinafter the Warsaw Convention].

3

district court's grant of summary judgment in favor of Korean Air that there was no "accident" under Article 17.

## I.

The Warsaw Convention does not define the word "accident," so the Supreme Court did. After looking to the language and drafting history of the Convention, the Court defined "accident" in this context to mean "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). The plaintiff in *Saks* felt pain in her left ear as the plane descended towards Los Angeles. *Id*. at 394. She deplaned without informing the crew of the lingering pain. *Id*. Five days later, Saks's doctor told her that she was permanently deaf in her left ear. *Id*. Saks sued. The Supreme Court held that "when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply." *Id*. at 406. Because Saks's hearing loss was not caused by an "unexpected or unusual event or happening," it was not an "accident" under the Warsaw Convention. *Id*.

In contrast, in *Olympic Airways v. Husain* the Court held that a flight attendant's repeated refusals to assist a passenger (who had requested help three times) did constitute an "accident." 540 U.S. 644 (2004). The plaintiff's husband had asthma and was sensitive to secondhand smoke. *Id*. at 647. The couple asked the airline for seats away from the smoking section. *Id*. On the last leg of their trip, they discovered during boarding that their seats were three rows in front of the smoking section. *Id*. The plaintiff asked to be moved twice before takeoff, but the flight attendant refused their request, stating that the plane was full when it was in fact not. *Id*. Not surprisingly, the passengers in the smoking section began smoking during the flight. The plaintiff asked to be moved a third time, but the flight attendant still refused to help. *Id*. at 647-

48. The plaintiff's husband died of an asthma attack onboard the aircraft. *Id.* at 648. The Court emphasized "that it is the cause of the injury—rather than the occurrence of the injury—that must satisfy the definition of 'accident.'" *Id.* at 650 (quoting *Saks*, 470 U.S. at 399). The Court concluded that the flight attendant's repeated refusal to assist in response to numerous requests for help was "unexpected or unusual" and qualified as an "accident." *Id.* at 657.

## II.

Nguyen argues that Korean Air's failure to provide wheelchair service as promised constitutes an "accident" under Article 17. Specifically, Nguyen argues (1) that the airline's failure is akin to the flight attendant's refusal in *Husain*; and (2) that Korean Air's failure to follow its own policies and procedures for wheelchair passengers led to her "accident." The district court held that Nguyen failed to present evidence that the airline's "failure" to place her in a wheelchair was an "unexpected or unusual event" and concluded that there was no "accident" under Article 17. Having reviewed the briefs and the record, we agree.

### A.    Korean Air did not Refuse Nguyen a Wheelchair

Both parties agree that Nguyen requested a wheelchair, that Korean Air designated Nguyen a "wheelchair passenger," that Nguyen attempted to discuss her wheelchair reservation with a flight attendant prior to landing in Dallas, and that Nguyen was not in a wheelchair when she was injured. To Nguyen, this is enough: the airline's failure to provide the requested wheelchair was an "unexpected or unusual event" that led to her "accident." Nguyen argues that three cases support this result: *Husain*, 540 U.S. 644, *Bunis v. Israir GSA, Inc.*, 511 F. Supp. 2d 319 (E.D.N.Y. 2007), and *Prescod v. AMR, Inc.*, 383 F.3d 861 (9th Cir. 2004). Each case is distinguishable.

First, Nguyen points to the Supreme Court's decision in *Husain*, discussed above. There, the Court focused on the flight attendant's refusal to

No. 15-10384

help—her "rejection of an explicit request for assistance." 540 U.S. at 655. But here the record is clear that Korean Air never refused Nguyen a wheelchair. Indeed, the airline identified Nguyen as a wheelchair passenger, announced deplaning procedures in Korean and English prior to landing, had wheelchairs and wheelchair attendants waiting upon arrival, and allowed *any passenger*—regardless of whether they were on the list of passengers who requested a wheelchair prior to the flight—to use a wheelchair by asking a wheelchair attendant, pointing to a wheelchair, or simply sitting in one. So *Husain* does not control.

Second, Nguyen contends that the district court's decision in *Bunis* supports her position. *Bunis* is a case about jurisdiction. The plaintiff requested a wheelchair after deplaning and waited more than twenty minutes to no avail—until the lights in the terminal started turning off. *Bunis*, 511 F. Supp. 2d at 320. The gate agent never returned, so the plaintiff gave up and began walking towards baggage claim. *Id.* The plaintiff suffered chest pains on the walk and had to be taken to the hospital. *Id.* at 320-21. In denying a motion to remand to state court, the judge held that the airline's "failure to provide the wheelchair . . . [was an] 'accident' within the meaning of the Warsaw Convention," *id.* at 323, and thus was properly removed. Unlike in *Bunis*, Nguyen never requested a wheelchair after deplaning, nor did she wait at the gate for one. To the contrary. Rows of wheelchairs were waiting for passengers as they deplaned, and Nguyen walked right past them.

Finally, Nguyen points to *Prescod*, a Ninth Circuit case in which the airline confiscated a passenger's medical bag and promised that the bag would travel with her, but then lost it. *Prescod v. AMR, Inc.*, 383 F.3d at 864. The medical equipment arrived two days later, but the plaintiff died within a week. *Id.* at 864-65. Relying on *Husain*, the court found that the "seizure of [plaintiff's] carry-on bag, and the subsequent delay in the bag's delivery" was

6

an "unusual or unexpected" event that led to the plaintiff's "accident." *Id.* at 868. Here, Korean Air promised Nguyen a wheelchair and had one waiting for her upon her arrival in Dallas, but a breakdown in communication meant Nguyen did not get in it.

## B.     Treatment of Nguyen was Consistent with Korean Air's Policies and Procedures

Next, Nguyen argues that the airline's failure to follow its own policies and procedures for wheelchair passengers was an "unusual or unexpected event" that led to her "accident." Nguyen contends that Korean Air violated its own policies in two ways: (1) by not informing her of its wheelchair procedures in Vietnamese, her native language, even though an airline agent in Dallas spoke Vietnamese; and (2) by overlooking that Nguyen, who was designated a "wheelchair passenger," did not end up in a wheelchair after deplaning, and failing to locate her to provide a wheelchair.

Nguyen relies on the district court opinion in *Husain* ("When a passenger boards an airplane, he or she should be able to expect that the flight crew will comply with accepted procedures and rules. A failure to do so is unexpected." *Husain v. Olympic Airways*, 116 F. Supp. 2d 1121, 1134 (N.D. Cal. 2000)), and *Blansett v. Cont'l Airlines, Inc.*, which Nguyen cites repeatedly. In *Blansett*, the airline did not add a deep vein thrombosis warning to its pre-flight instructions, although many other air carriers had. 379 F.3d. at 178. Blansett suffered deep vein thrombosis on a transatlantic flight resulting in a stroke that left him permanently debilitated. *Id.* He sued under the Warsaw Convention, claiming that the airline's failure to give the warning constituted an "accident" under Article 17. *Id.* at 178-79. Recognizing that the Supreme Court did not create "a *per se* rule that any departure from an industry standard of care must be an 'accident,'" and finding that some airlines gave the warning and others did not, our court held that "Continental's failure to warn

7

of deep vein thrombosis was not an 'unusual or unexpected event' and not a qualifying 'accident.'" *Id*. at 182.

Returning to this case, the district court held that "Nguyen has not produced any evidence suggesting that Korean Air's employees . . . deviated in any way from their internal policies and procedures or from industry standards in failing to ensure that she disembarked in a wheelchair." We agree.

### 1. Personalized Instructions in a Passenger's Native Language are not Required

Nguyen asserts that Korean Air had a "Vietnamese-speaking gate agent present who, on previous occasions had gone on to planes to make announcements in Vietnamese." She states that the airline's "policy" required the employee to communicate with Nguyen. This, she says, contradicts the district court's finding that Korean Air's "employees acted in an entirely normal and expected fashion during disembarkation." Nguyen's assertion is misleading. The employee in question worked as a ground agent for Worldwide Flight Services, not as a gate agent for the airline. The employee helped Worldwide with wheelchair passengers, including Korean Air passengers, but stated that he spent most of his time helping Customs officers with translation. He went onto aircraft "very seldom," and when he did it was when "Custom[s] wanted to get a passenger from the airplane first," not to speak with or assist wheelchair passengers. The employee's statements in no way contradict the district court's finding that the airline's employees acted in a normal and expected fashion.

Nguyen contends that the airline's "failure to take any reasonable steps to communicate with [her] and get her in the promised wheelchair" was an "unexpected or unusual event" that led to her "accident." Nguyen does not present any caselaw on this point and—tellingly—does not argue that either Korean Air's policies or industry standards require the airline to communicate

8

with each passenger in her native language. The record here establishes that on the flight in question, the airline had flight attendants communicate in Korean, because the flight departed from Korea, and in English, because the flight landed in the United States.[3] The passenger makeup of Nguyen's flight to Dallas demonstrates the implausibility of her "personalized instruction" argument: the flight had passengers from eighteen different nations. The list of "wheelchair passengers" alone included people from seven different nations. Nguyen did not present any evidence that it was "unexpected or unusual" for the airline to communicate with passengers in only Korean and English.

## 2.    Any Failure to Ensure that Nguyen was Actually Placed in a Wheelchair was not "Unexpected or Unusual"

Korean Air's General Manager of the General Affairs Team declared the following about the airline's wheelchair policies and procedures:

- Any passenger is eligible for a wheelchair, free of charge.
- It was unlawful at the time of Nguyen's flight to refuse a wheelchair to anyone who requests one.
- Passengers can request a wheelchair prior to their flight, during their flight, or even after the flight has landed.
- It is not uncommon for a wheelchair designated passenger to cancel, refuse, or ignore wheelchair service.
- Korean Air allows passengers to cancel a wheelchair request or ignore/refuse the service.

Nguyen's final argument is that—in addition to the above—Korean Air "has a policy of looking for a passenger on the wheelchair list . . . who did not end up in a wheelchair," which it violated when it did not try to locate Nguyen after she deplaned. Nguyen points to only the statement of Alexander Moore,

---

[3] As one would expect, Korean Air had three flight attendants who spoke Vietnamese on Nguyen's flight from Vietnam to Korea.

an employee of Prospect Services at Dallas-Fort Worth airport who assisted Korean Air passengers needing wheelchair assistance. Moore testified that Korean Air "always tried" to find wheelchair passengers who deplaned but did not end up in a wheelchair. But Moore also testified that (1) he never saw a Korean Air employee actually find someone looking for a wheelchair, (2) Korean Air employees looked for Nguyen on the day she deplaned in Dallas because that is what they always did, and (3) he did not actually know what the airline's policy or practice was in this regard—he could only speak to Prospect's policies and procedures and what he saw Korean Air employees doing. Construing all facts in light most favorable to Nguyen, we do not perceive in Moore's testimony that the airline had such a policy. Even if it did however, the airline's failure to (1) identify Nguyen as a "wheelchair passenger" who did not end up in a wheelchair after deplaning and (2) track her down in the airport to ensure that she did not want a wheelchair would still not constitute an "unexpected or unusual event" leading to an "accident" under Article 17.

Nguyen concedes that a flight attendant announced the airline's wheelchair procedures prior to landing, and that Nguyen walked past a row of wheelchairs next to the door of the aircraft. Wheelchair attendants stood behind the wheelchairs. Moore himself testified that any passenger on the wheelchair list who chose to disregard her wheelchair request and walk was permitted to do so. In fact, Moore said that a typical flight would have one-to-two such "disregards." Under these facts, it would not have been "unexpected or unusual" for Korean Air employees to assume Nguyen simply did not want a wheelchair, and to refrain from tracking her down in the airport to provide her with the same empty wheelchair she just walked past. As in *Blansett*, we do not depart from the direction of the Supreme Court by establishing a *per se* rule that any deviation—no matter how small—from an airline's policies and

procedures *must* give rise to an "accident" under the Warsaw Convention. *See Blansett*, 379 F.3d at 182. And Nguyen has provided no evidence that the industry standard requires such a search.

## CONCLUSION

The district court was correct in holding that Nguyen's injuries were not the result of an "accident" under the Warsaw Convention because her failure to be placed in a wheelchair was not an "unexpected or unusual" event. As Nguyen did not suffer an "accident" under Article 17, we need not determine whether the failure to place Nguyen in a wheelchair was a "link in the chain" of causes leading to her injuries. *See Saks*, 470 U.S. at 406.

The judgment of the district court is AFFIRMED.